THE CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY

*v.*

DANIEL HAY *et al.*

*Filed at Ottawa January 25, 1887.*

1. NOTICE—*by possession of land—as to right of way.* Where a railway company has performed its part of a contract for a right of way over a tract of land, and has entered into possession of the same, with the owner's consent, the company will become the equitable owner of the right of way, and its continued possession, and that of its successor, will be notice to all subsequent purchasers of the land from the original owner, of its equitable rights.

2. VENDOR AND PURCHASER—*of their relations of trust towards each other.* From the time of the contract for the sale of land, the vendor, as to the land, becomes a trustee for the purchaser, and the latter, as to the purchase money, becomes a trustee for the vendor, who has a lien upon the land therefor.

3. LIMITATION—*as against a trust.* No lapse of time is a bar to a direct trust, as between trustee and *cestui que trust.* At least it will not begin to run before the trust is openly disavowed by the trustee, and this is fully made known to the *cestui que trust.*

4. LACHES — *as against bill for specific performance.* The owner of land in 1871 entered into an agreement with a railway company, in which he agreed to convey a strip of land over the same for a main and side-track, in consideration of the location of a station on the premises. During the same year the company entered into the possession of such strip of land, with the consent of the owner, and fully performed its part of the contract, and continued such occupancy, by itself and successors, without objection, for about

thirteen years, when its successor filed a bill for the specific performance of the contract: *Held*, that the doctrine of *laches* had no application in the case, and presented no defence.

5. ESTOPPEL—*to enforce specific performance—by declarations of an unauthorized agent.* To a bill by a railway company for the specific performance of a contract to grant a right of way over land, as against a subsequent purchaser, the latter set up an alleged estoppel, arising out of the statement of an agent of the company employed to settle for and obtain rights of way, that the company claimed a strip of a less width than that provided for in the contract, made before the defendant's purchase of the land. It appeared that such statement was made in ignorance of the company's rights, and that the agent had no authority to release any of its rights acquired under the contract: *Held*, that such statements or admissions of the agent created no equitable estoppel.

6. EJECTMENT — *defence under equitable title.* Although the general rule is that the legal title must prevail in a court of law, nevertheless a purchaser of land in the possession thereof by the consent of the vendor, who has paid all the purchase money or performed his part of the contract, may successfully defend his possession in an action of ejectment brought by his vendor.

7. CHANCERY—*relief against mistakes of fact.* Courts of equity have jurisdiction to relieve against mistakes of fact, and to set aside judgments at law, and allow a new trial on the ground of newly discovered evidence. They may relieve against the effect of a judgment, when the defendant failed to make a defence of which he was ignorant at the time of the trial, and he was not guilty of negligence in failing to discover the same in time to avail of it, and where it is unconscionable to allow the judgment to stand.

8. In this case, facts and circumstances are stated from which it was held that a judgment in ejectment against a railway company for land occupied by it as a right of way, which it had bought and paid for, was no bar to a bill for the specific performance of the contract to convey the right of way. It appeared that the company was, at the time of the recovery, in ignorance of its equitable title, and had used due diligence in seeking to learn the facts, and failed to learn them until after the time had expired for taking a new trial at law.

APPEAL from the Circuit Court of Iroquois county; the Hon. ALFRED SAMPLE, Judge, presiding.

The original bill in equity in this case, filed July 21, 1884, by the Chicago and Eastern Illinois Railroad Company, set forth that that company and its predecessors had been, for about thirteen years, in the use of, for the operation of its

railroad, a strip of land, one hundred feet in width, across the north-east quarter of the south-east quarter of section 28, township 29, north of range 12, west of the second principal meridian, in Iroquois county, in this State,—said strip lying along the west side of East avenue, in the village of Papineau; that on July 21, 1884, complainant commenced proceedings for the condemnation of said strip of land, which were pending; that the defendant Daniel Hay had sued out of said court, and placed in the hands of the sheriff, a writ of execution, to put the defendant in possession of the premises. The bill prayed for an injunction to restrain the defendant and sheriff from interfering with complainant's possession of the premises until the determination of the condemnation proceedings. A preliminary injunction was granted.

On October 4, 1884, an amended bill was filed, setting out that the Chicago, Danville and Vincennes Railroad Company constructed the railroad; that at and before the time of the building thereof, one Alexander D. Hay was the owner of the south half of the aforesaid quarter-section, and that said Hay and one Cornell were the owners of the north-east quarter of said quarter-section, and the south-east quarter of the north-west quarter of said quarter-section; that about June 1, 1871, the said Alexander D. Hay and Cornell entered into an agreement with the last named company, whereby that company agreed to remove a station from the point where it had been previously located by the company, and locate such station on said premises, for the benefit of said Hay and Cornell and the public, and build its line of railroad over and upon said premises, in consideration of which said Hay and Cornell agreed to convey to said railroad company, as soon as the railroad should be constructed, a strip of land two hundred and fifty feet wide, being one hundred and twenty-five feet on each side of the centre line of the main track of the railroad, as it should be thereafter located over and upon said premises; that afterwards, during the year 1871, the said

railroad company did, with full knowledge and consent of said Alexander D. Hay and Cornell, build its line of railroad, side-tracks and station houses on said premises, pursuant to the contract, and took possession of said strip of land, two hundred and fifty feet in width; that on April 17, 1877, the entire line of railroad of said Chicago, Danville and Vincennes Railroad Company was sold under a decree of foreclosure, and bought by a purchasing committee of the first mortgage bond-holders; that said purchasers operated the railroad until August 28, 1877, when they transferred the same to the Chicago and Nashville Railroad Company, a corporation created to receive and operate the same; that on said 28th of August, the said last named company, and the State Line and Covington Railroad Company, were consolidated, forming the Chicago and Eastern Illinois Railroad Company; that on March 8, 1881, the last named company and the Danville and Grape Creek Railroad Company were consolidated, forming the Chicago and Eastern Illinois Railroad Company, the complainant herein. The complainant further avers, that after such agreement, and while the railroad company was in full use and possession of said premises, the said Alexander D. Hay and Cornell were adjudged bankrupts, and the said Daniel Hay, the defendant, was appointed assignee, who, as such assignee, conveyed all interest of said Alexander D. Hay and Cornell in the north-east quarter of said quarter-section, and the south-east quarter of the north-west quarter of said quarter-section, to one William S. Hay, in consideration of the sum of one dollar; that afterwards, said William S. Hay conveyed said forty-acre and ten-acre tracts to said Daniel Hay; that the said Chicago, Danville and Vincennes Railroad Company, and its successors, had been in the open and notorious possession of said strip of land, two hundred and fifty feet in width, from the time of building said railroad to that time; that it was only within the last few days previous that complainant had learned the facts stated in the amended bill, of

the making of such agreement, and with regard to the build-ing of the railroad, stating the reasons for the inability to ascertain said facts sooner, although due diligence had been used to that end. The amended bill prays for a specific per-formance of the alleged agreement, and a conveyance of the two hundred and fifty feet in width, above described.

On hearing, the court dismissed the bill in respect of spe-cific performance, and continued the bill otherwise, and con-tinued the injunction, and decreed the complainant to pay all the costs of the proceeding. The complainant appeals.

Mr. WILLIAM ARMSTRONG, for the appellant:

The rights set up in the amended bill could not have been set up as a defence in the ejectment suit. The action of ejectment is but a possessory action. *Wilburn* v. *Haines,* 43 Ill. 207.

Our equitable rights could not be considered in an action at law. *Greenup* v. *Sewell,* 18 Ill. 54; *Fish* v. *Blake,* 44 id. 305; *Stock Yards Co.* v. *Ferry Co.* 102 id. 514.

It is not necessary for a party in possession, claiming an equitable title, to sue for a conveyance until an attempt is made to oust him, for the reason his equitable title may ripen into a legal one under the Statute of Limitations.

Ignorance of the facts, and the loss of the necessary evi-dence, furnish a good excuse for the delay in seeking equitable relief, if one is necessary.

At the time the deed was taken for a strip of land one hundred feet wide, the agent taking the same had no notice of the prior equitable rights of the company. Under such circumstances, the acceptance of a deed for the one hundred feet was no waiver of the company's rights.

Courts of equity may grant relief against mistakes of fact, or fraud or accident. (Story's Eq. Jur. secs. 110, 140.) So relief may be granted against judgments at law, when the

32—119 ILL.

defence was unknown at the time of its recovery. *Hubbard* v. *Hobson*, Breese, 192; *Vennon* v. *Davis*, 35 Ill. 568; *Palmer* v. *Bethard*, 66 id. 531; *Gregg* v. *Brown*, 67 id. 526.

Messrs. DOYLE, MORRIS & PIERSON, for the appellees:

The judgment in the ejectment suit is a bar to the equitable rights sought in this bill. An equitable title, with possession rightfully taken under it, may be shown in bar of the action. *Stowe* v. *Russell*, 36 Ill. 408; *Cobb* v. *Lavalle*, 89 id. 333; *Kilgore* v. *Gockley*, 83 id. 112; *Staley* v. *Murphy*, 47 id. 241; *Herrell* v. *Sizeland*, 81 id. 460; *Smith* v. *Price*, 42 id. 399; *Baldwin* v. *Pool*, 74 id. 100; *Fleming* v. *Carter*, 70 id. 288.

A valid judgment for the plaintiff sweeps away every defence that should have been made against the action,—and this, too, for every subsequent suit, whether founded on the same or a different cause. Nor will equity relieve from the judgment on any ground of which he should have availed himself at law. *Kelly* v. *Donlin*, 70 Ill. 385; *Rogers* v. *Higgins*, 57 id. 244; *Howell* v. *Goodrich*, 69 id. 558; *Scott* v. *Whitlow*, 20 id. 310; *Loomis* v. *Riley*, 24 id. 307; *Briscoe* v. *Lloyd*, 64 id. 33; *Hamilton* v. *Quimby*, 46 id. 90; *Ruegger* v. *Railroad Co.* 103 id. 456.

Although a judgment at law be unjust, yet where a legal defence existed, and the defendant had an opportunity to make it, and failed through his own neglect or *laches*, no relief in equity can be obtained. *Winchester* v. *Grosvenor*, 48 Ill. 517; *Higgins* v. *Bullock*, 73 id. 208; *Railroad Co.* v. *Field*, 86 id. 271; *Town of Lyons* v. *Coolidge*, 89 id. 529; *Allen* v. *Smith*, 72 id. 333; *Clark* v. *Ewing*, 93 id. 577.

The appellant must show he was prevented from making the defence through accident, fraud or mistake, without fault or blame on his part. *Higgins* v. *Bullock*, 72 Ill. 208.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It appears from the evidence that the Chicago, Danville and Vincennes Railroad Company had, in the fall of 1870, in the construction of its line of railroad from the city of Chicago, reached the county of Iroquois; that it had built its track and was operating its road to a point in that county about three-fourths of a mile north of the property in controversy in this case, where it had established a temporary station, and that it had graded its road over the quarter-section of land mentioned in the pleadings; that one Alexander D. Hay became desirous of having a station located about the centre of the said quarter-section, and in December, 1870, an arrangement was made between him and the person engaged in procuring the right of way for the company, by which the railroad should be located over this quarter-section of land, and a station should be located at or near the centre of the same, and that in consideration of such location said Hay was to give the railroad company, for its use for main track and side-tracks and depot grounds, a strip of land two hundred and fifty feet in width, through the quarter-section. During the month of March, 1871, Hay consummated the arrangement with Mr. J. E. Young, the contractor and general manager of the railroad, in the presence of Mr. Burton, a citizen of the neighborhood, who was deputy county surveyor and had an interest in the location of the station. The evidence goes to show, though with less distinctness than the making of the contract is shown, that at this time a memorandum of the agreement was made and signed by Hay, but that it is lost or can not be found. In the spring of 1871 the railroad company built its line of railroad over this quarter-section, locating its station at about the centre of the same, where it has ever since been. The company removed a couple of buildings it had at the temporary station just north, on to these premises. While the side-track was being built thereon,

Hay was present on several occasions, and made suggestions to the contractor as to its location, and stated over to him the contract. On June 1, 1871, said Hay and Daniel K. Cornell caused a plat to be made by said Burton, surveyor, which was filed in the clerk's office of Iroquois county on August 1, 1871, laying out the entire north-east quarter of said quarter-section, and the south-east quarter of its north-west quarter, as a town, known as Papineau, on which the railroad is designated, and two hundred and fifty feet in width of ground is set apart and designated as railroad property. There was much other testimony of admissions of said Hay, of the making of such a contract. At the time the contract was made, said Alexander D. Hay was not the owner of the legal title of the quarter-section. The Illinois Central Railroad Company had sold the quarter-section, in lots of forty acres each, and executed contracts therefor, but no deeds. On March 31, 1871, the Illinois Central Railroad Company, the then owner, made a deed for the north-east quarter of said quarter-section, to Alexander D. Hay, and Daniel K. Cornell, his son-in-law, and on May 18, 1871, Cyril Tebo, the grantee of the Illinois Central Railroad Company, made a deed for the south-east quarter of the north-west quarter of said quarter-section to said Hay and Cornell, the land, in each instance, having been purchased by said Hay, and the entire consideration paid by him. In December, 1870, said Hay purchased the south-west quarter, and in April, 1871, the south-east quarter, of the said quarter-section.

The evidence of the making of the contract alleged is satisfactory and conclusive. There is no evidence in contradiction, and but some two or three circumstances which are relied upon as showing there was no such contract made. Mr. Young testified that it was part of the contract with Hay that Young & Co., the railroad contractors, were to have a half interest in the town lots of Papineau. Mr. Donovan, the right of way agent, testified that he had an interest in the

lots Young & Co. were to receive ; .that he did not receive any of the lots in Papineau, and did not know that Young & Co. had ; that if they had, he thinks he would have received his share. This is insisted upon as showing there was no such contract. It might go to show that Hay did not give the full consideration for the location of the depot, but it is not inconsistent with having made the contract. Another circumstance relied on, is some vague testimony as to proceedings for condemnation of this land before one McNeil, who was a county judge and justice of the peace. Nothing more is shown than statements that such proceedings were commenced and commissioners appointed. No papers were produced, and nothing further shown. Such testimony would be of more or less weight, according to whether the condemnation proceeding was commenced before or after the time of the making of the alleged contract. If after, it would be strong evidence against such a contract. All that the testimony shows in this respect of time, is the statement of Young, that, as he thinks, in the early part of 1871 he had a conversation with the attorneys in reference to the condemnation proceeding ; that the condemnation proceedings had occurred when he had that conversation. The complainant states, merely, that he saw the papers in that proceeding in 1872, giving no intimation as to the time when the proceeding was commenced. A further circumstance is, that in October, 1878, one Blakeley, who, from December, 1876, until November, 1882, was in the employ of the parties having charge of the railroad, and acted in settling up matters pertaining. to the right of way, on October 3, 1878, procured from Daniel Hay, defendant, a deed to the complainant for one hundred feet in width of this two hundred and fifty feet strip, through the north half of the said quarter-section. This deed having been obtained in ignorance of the alleged contract, weighs but little in disproof thereof. All these circumstances are far from being of weight sufficient to countervail the strong body of

evidence which so satisfactorily establishes the making of this alleged contract.

The contract proven, then the equitable title of the ground in question was in the Chicago, Danville and Vincennes Railroad Company, from which company it passed to the present complainant. There was after, but the bare legal title in Hay, who made the contract, which he held in trust for the benefit of the railroad company, and all subsequently taking such title under him, took it charged with the same trust, being affected with notice thereof from the occupation and use of the ground for the railroad.

The objection of *laches* which is made, so far as respects the remedy for specific performance, is without application to such a case as this. (Pomeroy on Specific Per. of Contracts, sec. 404.) The railroad company had entirely performed on its part, and was in the full possession and enjoyment of the property, with the consent of Alexander D. Hay. Nothing remained to be done but for the former owner to make conveyance of the legal title. The doctrine is, that from the time of the contract for the sale of land, the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase money, becomes a trustee for the vendor, who has a lien upon the land therefor. No lapse of time is a bar to a direct trust, as between trustee and *cestui que trust.* (*Decouche* v. *Savetier*, 3 Johns. Ch. 190.) At least, time begins to run against a trust only from the time when it is openly disavowed by the trustee who insists upon an adverse right or interest which is fully and unequivocally made known to the *cestui que trust.* (*Oliver* v. *Piatt*, 3 How. 411.) The railroad was built and operated over the premises with the consent and acquiescence of Alexander D. Hay, who made the contract, until his death, in June, 1873, and subsequently was operated, without question of the railroad company's right, till in the spring of 1878, when Blakeley, the right of way agent, applied to defendant Hay for the deed of one

hundred feet.    There is manifestly no *laches* to bar specific performance.

There is a sort of claim of estoppel against the railroad company to assert its right, attempted to be set up in the proof and argument, although there is no such claim by the answer, arising from the company's alleged disclaimer of interest in the premises, and defendant Hay's purchase of the same afterward.   All the foundation for this, is the statement of Blakeley when the deed of the one hundred feet was obtained, testified to by Hay, that the railroad company disclaimed to have right to anything more than the one hundred feet.    This alleged statement of Blakeley was made in ignorance of the company's rights.   He was but a mere employe in settling up right of way matters, under the orders and supervision of his superior officers, and had no authority to release any right the company had in its lands, or to bar it, by estoppel, from the assertion of any of its rights thereto. Without further pursuing this point, we find no support in the evidence of any equitable claim in Daniel Hay, founded upon estoppel or waiver, or upon being a purchaser for a valuable consideration without notice.

The only serious question we find, is whether the judgment in the ejectment suit is an obstacle to the complainant's claim of relief.   On March 29, 1883, a judgment in an ejectment suit theretofore brought by said Daniel Hay against the complainant, for the recovery of the possession of one hundred feet in width on the east side of, and being a part of, said strip of land of two hundred and fifty feet in width, was recovered by said Hay, against complainant, for the possession of said one hundred feet.    Though the general rule be that the legal title must prevail in a court of law, in an action of ejectment, yet there are decisions of this court, that when a purchaser of land is in possession, by consent of the seller, with the purchase money all paid, he may defend successfully against an action of ejectment brought by the vendor.   *Stow* v. *Russell,*

36 Ill. 36; *Sloan* v. *Petrie,* 16 id. 262; *Staley* v. *Murphy,* 47 id. 241; *Kilgour* v. *Gockley,* 83 id. 109.

Under these decisions, we think the defendant in the ejectment suit (this complainant,) had a good defence, as shown by the evidence in the present case, which might, if then known, have been successfully made to that suit; but the defendant was in ignorance of the facts which made the defence. It is of the common jurisdiction of courts of equity to relieve against mistakes in matters of fact, and to set aside judgments at law and allow a new trial, on the ground of newly discovered testimony. Story, in his work on Equitable Jurisprudence, (section 110,) in speaking of mistakes, says: "This is sometimes the result of accident, in its large sense, but, as distinguished from it, it is some unintentional act or omission, error arising from ignorance, surprise, imposition or misplaced confidence." In the note thereto it is remarked: "Mr. Jeremy defines mistake, in the sense of a court of equity, to be 'that result of ignorance of law or of fact which has misled a person to commit that which, if he had not been in error, he would not have done.'" (3 Jeremy on Equitable Jurisprudence, 2358.) And in speaking of the relief granted by courts of equity from the effect of a judgment at law, (section 140,) the author first named says: "So if a party has, *bona fide,* entirely forgotten the facts, he will be entitled to relief, because, under such circumstances, he acts under like mistake of the facts as if he had never known them." In *Vennum* v. *Davis,* 35 Ill. 568, this court said: "A party sued at law, having a defence of which he does not know, or of which he can not avail himself at law, either for the reason that it is purely equitable in its nature, or because, by the rules of law, he can not avail himself of it, may enjoin the judgment by bill in equity." And on page 576: "Here, then, is a plain case, where the complainant did not know of any defence to the suit at law. It may be likened unto the case

of newly discovered testimony, on a motion for a new trial. Such motions, if well supported, are seldom refused."

The proof is, that the facts of the defence were learned for the first time between July and October, 1884. There is no question as to their being material,—they are conclusive. There is much in the case in excuse of their not having been learned sooner, and to free from the imputation of negligence in that respect. There had been many changes in the management of the railroad, which, naturally, would cause more or less of confusion and liability to loss of papers, and of unacquaintance by the present managers of the road with the doings of the original company in the starting of the railroad. It was operated for some time by the original company that built the road; then by a receiver and a subsequent receiver; it was then sold under a mortgage foreclosure, and operated for some time by the purchasing committee, and after one or two consolidations it came into the ownership of the present complainant, and there was the considerable lapse of time, and the death of the party who made the grant of the right of way. A large part of the papers of the original railroad company were destroyed by the Chicago fire, in 1871. Complainant's counsel became its general solicitor, with charge of all its legal matters, in October, 1881, and then found the ejectment suit of Daniel Hay against the complainant pending, it having been commenced January 18, 1881. He immediately began looking through the files, and all the papers of the various offices of the companies which had been connected with the management of the road, and of the receiver, but failed to find anything with reference to the right of way through this property.

The judgment which was rendered March 30, 1883, was one in an ejectment suit. It is not the policy of the law, that in an ejectment suit a party should be concluded by one trial and judgment, and it is an express provision of the

statute that a party against whom judgment is rendered in an action of ejectment, shall, at any time within one year thereafter, upon payment of the costs of the former trial, be entitled to have the judgment vacated, and have a new·trial. Here, the costs were paid within the year, but, for some cause not explained by the record, the judgment does not appear to have been vacated. Thus the defendant had performed the condition entitling it to have the judgment vacated, and so was entitled to have it vacated, which would have been done, of course, on mere motion. Had the discovery of the defence which existed have been made before the expiration of the year, no doubt the judgment would, in form, have been vacated. Under the circumstances which this case presents, it would be highly inequitable that complainant should lose its land, which has been bought and paid for, and been for so many years in the undisturbed use and enjoyment of the purchaser and those under it, from lack of a formal entry of vacation of the judgment, which the party was entitled, under the statute, to have made on mere motion, the not making of which, we must think, came solely from excusable ignorance of the facts of the defence. We are of opinion the judgment should not be held a bar to the maintenance of the bill, and that the complainant is entitled to the relief prayed for in the amended bill, and that the injunction be made perpetual.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. JUSTICE MULKEY: I dissent from the opinion in this case.