JOSEPH P. WILSON and Another v. CATHERINE J. WELLES and Another.

| 79 | 53 |
| 84 | 112 |
| 84 | 114 |

February 1. 1900.

Nos. 11,878—(192).

**Express Trust.**

Express trusts are created by contracts and agreements which directly and expressly point out the persons, property, and purposes of the trust. Implied trusts are those which the law implies from the language of the contract and the evident intent and purpose of the parties. Within this definition it is *held* that the transaction set out in the opinion created an express trust between the parties.

**Right of Beneficiary as Affected by Lapse of Time.**

The rights of a cestui que trust in cases of express trusts are not barred by lapse of time so long as there is no breach, disavowal, or repudiation of the trust by the trustee. Time runs against such trusts only from the date of notice to the cestui que trust of a breach or repudiation thereof by the trustee.

**Repayment of Advances by Trustee.**

A trustee is entitled to repayment of all money advanced or paid out by him in furtherance of the trust relations.

Action in the district court for Hennepin county by Joseph P. Wilson and Charles A. Gilman against Catherine J. Welles and another, as executrices of the will of Henry T. Welles, deceased, to recover $13,460 and interest on an express trust declared by decedent. The case was tried before Elliott, J., who made findings of fact, and as conclusion of law found that plaintiffs were entitled to an accounting, and that in stating the account defendants should be credited with certain sums and charged with other sums. From an order denying a motion for a new trial, defendants appealed. Modified.

*J. B. Atwater*, for appellants.

*Weed Munro* and *Calhoun & Bennett*, for respondents.

BROWN, J.

This is an appeal from an order denying appellants' motion for a new trial. Some time in 1872, the plaintiffs Gilman and Wilson and Henry T. Welles, now deceased, entered into a written contract or agreement in the words and figures following, omitting the description of the lands, to wit:

"This is to certify that I have this day sold to Chas. A. Gilman and J. P. Wilson 12 pieces of Chippewa half-breed scrip of 80 acres each, making 960 acres, and numbered as follows, viz. 149, 256, 217, 181, 262, 224, 221, 187, 240, 182, 279, and 221, at $2.50 per acre, amounting to $2,400, with interest at the rate of 12 per cent. per annum until paid for; said Gilman and Wilson to pay for the scrip when the land is sold; said scrip to be located on minutes of land belonging to said Gilman & Wilson at Pine Mountain Lake, in townships 139 and 140, range 31, as follows, viz., and is to be held by me in trust for said Gilman and Wilson and as security for the payment of the scrip until said lands are sold."

Then follows a full description of the lands.

Prior thereto said Gilman and Wilson had explored and examined said lands, and expended considerable time and money in so doing. Pursuant to such agreement, and with said half-breed scrip, said Gilman and Wilson selected and located said lands at the proper United States land office in the name of said Welles, but in trust, as provided in said contract, for their benefit, and as security for the repayment of the purchase price of the scrip, $2,400, with interest at the rate of 12 per cent. per annum. After such lands had been so located and entered, such scrip and entry were cancelled by the general land office on the ground and for the reason that the scrip was void and worthless. The order so cancelling said entry contained a further order allowing the interested parties sixty days in which to perfect the title to the lands, which they could do under and by virtue of an act of congress entitled "An act to perfect certain land titles therein described," approved June 8, 1872, by the payment to the government of $1.25 per acre.

Thereafter said Welles, in furtherance of the foregoing agreement, advanced to said Wilson and Gilman the sum of $1,200 with which to enable them to complete the purchase, and so perfect the title to said lands. Said parties completed such purchase, and caused the patent and title therefor to be issued in the name of said Welles

in accordance with said agreement. Welles was never repaid any part of the money so advanced by him, nor paid the agreed price of the scrip. He sold an undivided interest in the lands to Franklin Steele in 1876, and his remaining interest therein to the St. Anthony Lumber Company in 1887. He died in 1898. The appellants were appointed executrices of his will, and respondents filed a claim in the probate court of Hennepin county asking for an accounting as to the proceeds of said lands. The probate court rejected the claim, but it was allowed on appeal to the district court. The district court made full and complete findings of all the foregoing facts and others; and ordered the matter referred for the purpose of ascertaining the amount due respondents.

The contention on the part of respondents is that by the transaction shown an express trust was created between the parties, and that they are entitled to an accounting. Appellants contend that no express trust was created; that, when the scrip was cancelled by the general land office, the project intended by the written contract was abandoned, and that Welles acquired title to the lands in his own right, and without reference to said contract; and that, if this contention be not true, the most that can be claimed from the transaction is that it created an implied trust only, and that respondents' rights, whatever they may have been, are barred by the statute of limitations and by their laches.

The principal question raised on this appeal and for the consideration of this court is whether the findings of fact made by the court below were sustained by the evidence. We have examined the evidence with care, and a majority of the court are of the opinion that, within the well-established rule that the findings of the trial court should be sustained on appeal if there is any evidence reasonably tending to support them, the findings in this case should be sustained, except with reference to the amount due Welles from respondents. An extended review of the evidence would serve no good purpose, and we refrain. It is sufficient to say that there is evidence in the case reasonably tending to support the findings, though it is not of the most convincing and satisfactory nature.

Express trusts are created by contracts and agreements which directly and expressly point out the persons, property, and purposes

of the trust. Implied trusts are those which the law implies from the language of the contract and the evident intent and purpose of the parties. 1 Perry, Trusts, §§ 24, 25. There can be no question but that the transaction here under consideration created an express trust between the parties. And, so long as the relation thus created remained unrepudiated by the trustee, the statute of limitations would not run, nor would lapse of time bar the rights of respondents. Time begins to run against an express trust only from the time a breach, disavowal, or repudiation thereof by the trustee is made known to the cestui que trust. Smith v. Glover, 44 Minn. 260, 46 N. W. 406; Thomas v. Merry, 113 Ind. 83, 15 N. E. 244; Chicago v. Hay, 119 Ill. 493, 10 N. E. 29. Welles never, so far as the evidence shows, expressly disavowed or repudiated this trust, and, if there was any repudiation thereof at all by him, it was by the sale of the lands without respondents' consent, and the appropriation of the proceeds to his own use. But the court below found as a fact that the respondents did not know of such sale until within a year of the death of Welles. Both respondents testified directly to that effect, and the finding is supported.

Appellants offered in evidence two receipts, one from each respondent, for the purpose of showing a settlement and adjustment of all the matters existing between the parties, including the rights now asserted and here involved. The receipt from Wilson is quite broad, but is not conclusive. It was explained by him as not intended to include this matter, and a majority of the court hold that his explanation is sufficiently corroborated. The Gilman receipt was for $200, and he claims that the money was advanced to him in furtherance of the trust, to pay to some person who had some interest in the lands, and was to be returned to Welles when the trust relations were settled. The explanation is deemed sufficient in view of circumstances shown in the evidence.

The court below erred in not including in the indebtedness due Welles the $1,200 furnished or advanced by him to enable respondents to complete the purchase of the lands, and the $200 paid to Gilman. If both these items are not to be included in such indebtedness, respondents' case falls to the ground. Their contention is that all the money advanced by Welles was so advanced in fur-

therance of the trust, and, this being so, Welles is entitled to its repayment. The written contract provided for interest at the rate of 12 per cent., and the court below will allow such rate, not only upon the $2,400, but upon the other two items of indebtedness as well. This disposes of the case, and of all assignments of error deserving special mention.

The cause is remanded to the court below, with directions to amend its conclusions of law to correspond with the views herein expressed.