### H. W. LAMBERTON v. CHARLES M. YOUMANS.[1]

July 5, 1901.

Nos. 12,549—(84).

**Express Trust—Laches.**

> An express trust provided that land should be purchased with the money of the cestui que trust, with the title in the name of the trustee; that such lands should be sold by the trustee, the profits thereof to be equally divided between the parties. For a period of twelve years after the lands had been sold, and sixteen years after any payment had been made by the trustee, the cestui que trust failed to make inquiry concerning the progress of the transaction, or to call for an accounting, but the trustee had never repudiated the trust. *Held* that, the trustee having failed to make any report or accounting of his transactions, the cestui que trust was not guilty of such laches as to bar him from enforcing the trust.

William H. Yale having made an assignment for the benefit of his creditors, plaintiff, as a creditor, filed his claim with the assignee, defendant Youmans. The claim being disallowed, plaintiff appealed to the district court for Winona county. The case was tried before Snow, J., who found in favor of defendant. From a judgment entered pursuant to the findings, plaintiff appealed to the supreme court. Reversed.

*Henry M. Lamberton*, for appellant.

*C. A. Morey*, for respondents.

LEWIS, J.

On February 27, 1879, William H. Yale executed a declaration of trust which recited that H. W. Lamberton had advanced

[1] Reported in 86 N. W. 894.

$4,983.83 for the purpose of purchasing city lots in Winona, and certain farming lands in Winona and Mower counties. The document stated that the title to the property should be taken in the name of Yale; that he would execute his promissory note, bearing interest at ten per cent., to Lamberton, for the amount advanced; that he would proceed to sell the lots and property as though they were his own, applying the proceeds upon the note, and in one year from the date of the instrument pay to Lamberton one-half of the amount remaining unpaid on the note, and, in consideration for the other one-half, convey to him by deed an undivided one-half of the property remaining unsold, and an undivided one-half of the notes and mortgages taken for the property that had been sold; all profits from the sales to be divided equally after repaying Lamberton the amount of the note, with interest. There was a further provision that, if at any time Lamberton deemed himself insecure, Yale, on demand, would execute a deed to him of an undivided one-half interest in all the property remaining unsold, and execute a new note for any remaining portion unpaid, which new note should be payable on or before February 27, 1880, and, if demanded, secure such note by mortgage. The promissory note mentioned in this agreement was given, certain property purchased, and within one year from the date of the agreement Yale had sold property purchased with Lamberton's money amounting to the sum of $3,350; but there remained unsold three parcels, which were subsequently sold at the following dates: April 28, 1880, $2,000; February 18, 1882, $1,800; and November 19, 1889, $1,000. Payments were made to Lamberton as follows: On April 29, 1880, $1,500; May, 1880, $489.33; and on February 18, 1882, $1,800. No other payments were ever made upon this contract, and no settlement or accounting was ever had between the parties.

On August 29, 1883, Yale executed another declaration of trust, whereby it was agreed that Lamberton should advance the sum of $2,675 for the purchase of certain land; that Yale should give a note therefor, with interest at eight per cent., payable on demand, Yale to take the title in his own name, cause the property to be platted into lots, sell the same, and apply the proceeds on

the note, and, when the property was sold, to divide the profits equally with Lamberton; and, if at any time Lamberton should make demand, Yale agreed to deed to him a one-half interest in all property remaining unsold, and either pay for or secure Lamberton for the other one-half of the purchase money so advanced by him. At the time of the execution of this contract the note was executed and delivered.

The land located in Winona was purchased, deeded to Yale, and platted into lots by him; and thereafter, from October 3, 1883, to August 20, 1887, Yale sold the property for a total sum of $10,402.50, no part of which was ever paid by Yale to Lamberton. Neither of these contracts were of record. Both parties were residents of the city of Winona and neighbors, and were intimately associated both in social and business relations. Lamberton was to a considerable extent acquainted with the real-estate market in Winona, and had ample opportunity to examine the records; but, as a matter of fact, he had no actual knowledge of any of the sales, save those specially mentioned in the complaint as known to him. Lamberton might, by the exercise of ordinary care and prudence, have become fully familiar with the fact that such sales had been made by Yale; but he had never made any demand for an accounting or settlement, and Yale had never expressly disclaimed or repudiated his liability to Lamberton. On May 12, 1899, Yale, having become insolvent, made an assignment, under G. S. 1878, c. 41, transferring all of his property to respondent Youmans.

Lamberton filed his duly-verified claim for the sums not accounted for by Yale, which was rejected, and appeal was taken to the district court, pleadings were ordered, and the cause was tried before the court without a jury. The facts as heretofore stated were substantially found by the court, and judgment was ordered for defendants. Plaintiff appealed from the judgment entered in favor of defendants. Among the findings of fact was the following:

"The court therefore finds the plaintiff to have been guilty of gross and inexcusable laches in failing for so long a time in any

way to enforce or assert his rights and equities under said con-
tracts."

The case was disposed of by the court below upon the theory
that, in so far as appellant's claim was legal, it was barred
by the statute of limitations, and, in so far as it was equitable, all
rights had been lost by appellant's laches.

The first question for determination is, what was the legal
status between Lamberton and Yale at the time of the assign-
ment? If it was legal, all claims had been barred by the statute
of limitations. If equitable, what was the nature of those rela-
tions? The instruments above mentioned were express trusts.
The first agreement became fully executed, so far as disposing
of the property in question was concerned, on November 19, 1889,
but no payment had been made after February 18, 1882. Under
the second contract the sales were completed on August 20, 1887,
so that, in reference to the first agreement, ten years had elapsed
after disposing of the property, and sixteen years had elapsed
after making any payments thereon, whereas under the second
contract twelve years had elapsed after fully disposing of the
property, and no payments were ever made. The purpose of the
trust was to sell the land, convert it into money, and turn over
to the cestui que trust his proportion of the profits. The trust
was never fully executed, and the nature of the parties' relations
did not change from an equitable to a legal status. If the cestui
que trust had been informed of the fact that the property had
been converted into money, possibly his claim against the trustee
would thereby have been changed from an equitable to a legal
basis, and the statute of limitations would run against it; but as
between the trustee and the cestui que trust, in the absence of
such knowledge, the statute of limitations has no application, and
time does not run against the demand until repudiated by the
trustee, and knowledge thereof on the part of the cestui que
trust. Wilson v. Welles, 79 Minn. 53, 81 N. W. 549; 2 Perry,
Trusts, (5th Ed.) § 863, and cases cited thereunder.

The only other question requiring solution is whether or not
the conclusion of the trial court, in the form of a finding of fact,

that the cestui que trust was guilty of laches, is sustained by the evidence. This finding must be taken into consideration in connection with the specific findings as to the actual knowledge which Lamberton possessed, viz., that he had no knowledge that the property had been sold until the time of assignment by Yale; and the conclusion of the court in the form of a finding of fact that he had been guilty of laches cannot be construed in contradiction to the specific finding of fact as to the extent of his knowledge. Wheeler v. Gorman, 80 Minn. 462, 83 N. W. 442. The only conduct, therefore, on the part of the cestui que trust from which laches can be inferred is that, having the opportunity, he never made inquiry as to whether or not the lands were sold. Negligence was predicated by the trial court upon the fact that Lamberton was a neighbor of his trustee; that he met him frequently in business and social relations, and might have ascertained from the records whether the property was being transferred, and therefore from the mere fact that he failed to make any inquiry or to call for an accounting for the period of sixteen years after receiving any money upon account, as a matter of law, he was chargeable with laches.

We think the trial court is not in accord with the trend of authorities, and the principle thus declared is unsafe and unjust. There would appear to have been much carelessness and negligence, from a business point of view, on appellant's part, in permitting so many years to go by without demanding an accounting; but the mere fact of delay, in itself, under such circumstances, is not sufficient evidence of an intention on the part of the cestui que trust to discharge his trustee from the obligation under which he rests. The agreements did not limit the trustee in disposing of the land within any particular time. The remedy reserved to the cestui que trust was to call for security and division of the property if he considered himself insecure. Under the terms of the trust, he certainly was not required to demand that the lands be sold within a shorter time than they actually were sold; and certainly the cestui que trust could not be charged with laches if he failed to make such demand, unless during those years he

had expressed himself insecure. The very fact that he did not make demand that the sales be made and accounts closed within a shorter period is stronger evidence of his belief in the sufficiency of the security and the faithfulness of the trustee than it is of an intention to abandon his claim against the trustee. Neither was there anything in the terms of the trust requiring the land to be sold and the account to be made within the ten or twelve years which elapsed after the sales were in fact completed, and the mere fact that the cestui que trust allowed those years to transpire without making a demand for a settlement is not sufficient evidence to indicate an intention on his part to abandon his claim against the trustee. Such delay may be accounted for rather upon the ground that he felt secure and had confidence in the ability of the trustee to care for the property, and finally to make the proper adjustment.

We have been unable to find any authority which holds that mere silence, under these circumstances, is sufficient to discharge a trustee from the obligations of his trust. It is well settled by the authorities that, in an express trust, acquiescence cannot be inferred on the part of the cestui que trust until he has actual knowledge of the repudiation of the trust, for the reason that it is the duty of the trustee to execute the trust, and it is not the essential duty of the cestui que trust to make inquiries. 2 Perry, Trusts (5th Ed.) § 850. The mere lapse of time, in itself, constitutes no bar to the enforcement of a subsisting trust, and time begins to run against a trust only from the period when it is actually disavowed by the trustee. Wilson v. Welles, supra. The insolvency of Yale and the appointment of his assignee do not change the relations of the cestui que trust to his estate. There is no evidence or finding to the effect that any of the other creditors were misled or deceived by any conduct on the part of the cestui que trust. While, of course, he is unable to pursue the trust fund in specie, he is entitled to stand in the same relation to the estate as any other creditor, and to participate in the proceeds thereof.

On the undisputed evidence, it conclusively appears that, as a matter of law, the cestui que trust was not guilty of any negli-

gence or conduct which would charge him with having abandoned his claim against the trustee. However unfortunately it may result for the other creditors of the estate who may have had no knowledge of this claim, yet the evidence is conclusive and the rule of law plain. Therefore nothing remains to be done except apply it.

Judgment reversed.