# H. J. KRUSE v. CHESTER D. TRIPP.[1]

## April 30, 1915.

## Nos. 19,216—(32).

**Partnership — accounting for royalties.**

1. In an action to dissolve an alleged copartnership, and for an accounting and other relief, it is *held* that the evidence supports the verdict of the jury and findings of the trial court to the effect that the alleged partnership was entered into, and that it included the royalty agreement involved in the action, all substantially as set forth in the complaint.

[1] Reported in 152 N. W. 538.

**Statute of frauds.**
> ´2. The agreement, not in writing, if within the statute of frauds, was fully performed within a year, and therefore not void or unenforceable.

Action in the district court for Crow Wing county against Chester D. Tripp and Crow Wing Land Co. to dissolve a partnership, for an accounting between the parties, ´and to restrain defendant· land company from paying to defendant Tripp the royalties mentioned in the opinion and to decree plaintiff to be the owner of an undivided one-half interest in and to the agreement mentioned in the opinion. The case was tried before Cant, J., and a jury which rendered affirmative answers to the questions mentioned on pages 254 and 255´ of the opinion.

The court made findings and ordered judgment in favor of plaintiff, as stated in the opinion. From an order denying his motion for a new trial, defendant Tripp appealed. Affirmed.

*Abbott, MacPherran, Lewis & Gilbert, William Harrison* and *William P. Harrison,* for appellant.

´*Fryberger, Fulton & Spear,* for respondent.

BROWN, C. J.

This action was brought for the dissolution of a copartnership alleged to have existed between plaintiff and defendant Tripp, for an accounting of the copartnership dealings and transactions, and that defendant Tripp be charged as trustee of certain property and property rights in his possession which plaintiff claims belong to the copartnership, and for other relief. Judgment was ordered for plaintiff, and defendant Tripp appealed from an order· denying a new trial. ·

The complaint alleged that on May 26, 1910, plaintiff and defendant Tripp entered into a oral partnership agreement, by the terms of which the parties as copartners were to share equally in all profits and losses in the business and transactions had by them, and particularly with reference to the purchase, sale, and disposition of a certain tract of land, and all profits and benefits arising therefrom. That at the time the partnership agreement was en-

tered into plaintiff had purchased in his own name all the surface rights in and to the south half of the northwest quarter of section 11, in town 46, range 29, Crow Wing county, in and to which the Pine Tree Manufacturing Co., a corporation, owned and held all mineral rights, and all marketable iron ore therein, which ore amounted to several million tons. That in said partnership agreement defendant Tripp proposed that he handle the surface rights in said land, as partnership property, and if plaintiff would turn the same over to the partnership, that not only would they derive a profit by the sale of the right of way to the Minneapolis, St. Paul & Sault Ste. Marie Railway Co., but that a further profit could be made by a disposal of the surface rights to the owner of the iron ore at a royalty of ten cents per ton upon all marketable ore taken therefrom. That thereupon plaintiff, as a part of such partnership agreement, accepted the proposition so made by defendant, and turned over his surface rights in the land to the partnership, and thereafter defendant managed and controlled the same, and finally disposed of the surface rights to the Pine Tree Manufacturing Co., upon the agreement of that company to pay therefor a royalty of 10 cents per ton upon all iron ore taken from the land. To bring about this agreement plaintiff conveyed the land to the Soo Railway Co. and the company reconveyed to defendant, whereupon defendant entered into the royalty agreement with the Pine Tree Company. The agreement was so entered into some time prior to October, 1910, and defendant thereafter received and appropriated to his own use the royalties paid by the company, amounting in the aggregate to several thousand dollars, one-half of which plaintiff alleged belonged to him. The complaint set out the facts in detail, but this general statement is deemed sufficient to an understanding of the case, and the allegations need not be referred to with more particularity. They were put in issue by the answer. The purpose of the action was to secure a dissolution of the alleged partnership, and a recovery by plaintiff of his share of the profits realized by defendant, in the royalties received by him as just stated. At the trial below the court submitted to the jury the question: (1) Whether the partnership agreement was entered into as alleged in the complaint;

and (2) whether the agreement included the surface rights in and to the land in question, and the transaction had by defendant with the Pine Tree Company. Both questions were answered by the jury in plaintiff's favor and in harmony with the allegations of the complaint. , The court thereupon made findings of fact, embodying therein the special findings of the jury, further detailing the relations between the parties and the transactions in respect to the particular land, the sale thereof by defendants in the interests of the partnership, the royalty agreement with the Pine Tree Company, the proceeds received from that transaction and agreement, and that the same and all thereof was done and performed by defendant in the interests of the partnership and for the joint benefit of plaintiff and defendant. Judgment for plaintiff was ordered accordingly.

The assignments of error present the questions: (1) Whether the findings of the court and jury are sustained by the evidence; and (2) whether the oral agreement of partnership, conceding it to have been entered into as claimed by plaintiff, was within the statute of frauds and therefore void or unenforceable.

1. The question whether the evidence supports the verdict of the jury and findings of the court does not require extended discussion. To discuss the evidence in detail, and with a view of demonstrating or attempting to demonstrate the correctness of such verdict and findings would serve no useful purpose, and result only in an unnecessarily long opinion. All controverted points in the evidence, and inconsistencies between the oral testimony of either party and written documents, were for the trial court and jury to solve and harmonize, and we have only to determine whether in view of the whole record the verdict and findings are clearly against the evidence.

It appears from the record that, prior to the date on which the agreement in question is claimed to have been entered into, plaintiff and defendant Tripp had for several years been closely related in both business and social affairs. Tripp was the general manager of the Rogers-Brown Ore Co., and plaintiff was the superintendent of the same company. This company was operating on the Cuyuna Range, and had discovered a deposit of iron ore in the land adjoin-

ing the tract in question. As officers of the company both plaintiff and Tripp knew of the discovery. They also knew, or at least had good reason to believe, that this deposit of ore extended into the land in question, and that there was a considerable deposit of ore therein. The surface and mineral rights in these lands were separately owned. The surface rights were of value and if properly handled could be turned to the pecuniary advantage of the owner. Plaintiff claims, and so testified on the trial, that on May 21, 1910, he entered into a contract with the agent of the owner for the purchase of the surface rights upon this particular tract, at the agreed price of $20 per acre. That on the twenty-sixth of May, 1910, he disclosed this fact to defendant, and that the parties then entered into the partnership agreement here relied upon for recovery. Whether plaintiff entered into this contract of purchase on May twenty-first, and whether the agreement of partnership was made on the twenty-sixth of May, were sharply contested issues on the trial. The evidence on both questions has been examined with care, with the result that we find no sufficient reason for interfering with the verdict, or the approval thereof by the trial court. It was claimed by defendant that he personally arranged for the purchase of the surface rights, and had the title placed in the name of plaintiff as a matter of convenience and because he, defendant, did not care to be known in the transaction. But the court found this claim of purchase not true. The place where the partnership agreement was claimed to have been made was located at Deerwood, Crow Wing county, where plaintiff resided. Defendant explicitly denied that he was at Deerwood on that date, but was in Duluth, and considerable evidence was presented to support his claim in this respect. On the other hand plaintiff was equally positive as to the date and place of agreement, and explicitly stated that it took place at Deerwood on the twenty-sixth of May. There may be some doubt upon this feature of the case, but the solution thereof was for the trial court and jury. The evidence is far from conclusive in favor of defendant's contention. The land was conveyed to plaintiff, and he paid the purchase price thereof, about $1,600. Of this payment from plaintiff's own funds there is no fair doubt. At the instance of defendant it was soon

thereafter conveyed by plaintiff to the Soo Railway Co., at an advance of about $60 per acre; the company in fact paid therefor the sum of $6,400. It was paid to plaintiff, and after deducting the original purchase price, the balance was turned over to defendant for the purpose, as found by the trial court, of enabling defendant to use the same in securing a return of the legal title to any rights in the surface necessary to make a trade of such rights to the owner of the underlying ore. Defendant was at the time in the employ of the railway company, and as such engaged in soliciting from iron ore operators shipment and transportation contracts. He represented to the company that the ownership of the surface would aid in securing such shipment contracts for ore mined on this and adjoining land, and also provide a right of way over the same. On this theory the company made the purchase referred to. Subsequently defendant requested and the company gave him a writing, wherein it was recited that the company had given defendant an option to purchase the surface rights, except the railroad right of way. With this document defendant entered into negotiations with the Pine Tree Co. and secured from it the royalty agreement here in question. The railway company conveyed the surface rights to defendant, and in consideration of the royalty agreement defendant in turn conveyed the same to the Pine Tree Co. Defendant paid the company for the reconveyance the sum of $4,000, and this the court found was partnership money, belonging to plaintiff and defendant jointly. There is no dispute about any of these facts, except as to the joint ownership of the money paid the railway company for the reconveyance of the property, but we find no reason for disagreeing with the trial court upon that point. It was the claim of plaintiff, and he so testified on the trial, that at the time of the partnership agreement and when the land was conveyed to the railway company defendant was to handle the rights thus involved through that company, and that the matter took this form as a cover and to conceal defendant's interest in the matter; and, further, that whatever profits were made, finally were to be divided equally. Defendant denied this, though he admitted that there was a joint interest in the land and that each was entitled to share in the profits up

129 M.—17.

to the time of the sale to the railway company for $6,400, but at that point he insists that the relations theretofore existing between the parties wholly terminated. This is plausible but not conclusive. The royalty agreement was not made in the interests of the railway company, and the fair inference is that it was in fulfilment of the agreement with plaintiff. It is significant that plaintiff received no part of the money paid by the railway company, save the original purchase price of the land, and that all over and above the amount was turned over to defendant, as found by the court, for further use in subsequent negotiations with the surface rights. It is quite clear that defendant, a shrewd dealer, was not content with the profit made from the sale to the railway company, and that he had larger matters and greater profits in view; in fact, at the time of the conveyance to the company he evidently had in mind the contract he finally consummated with the Pine Tree Co., and it is fair to assume that he retained the money paid by the railway company to plaintiff to enable him to complete the same. Such was the claim of plaintiff and the evidence fairly supports it in point of substance. While defendant claimed, as we understand the matter, that plaintiff received credit for this money, the evidence upon the question presented an issue of fact for the trial court.

But we pause; enough has been said; we sustain the verdict and the findings, for the record will not justify the conclusion that the evidence is clearly and palpably against them. Defendant's business integrity and veracity were severely challenged by the disclosure made on the trial in respect to the transactions involved, and it was for the jury to say whether he spoke the truth, or whether the truth came from the lips of plaintiff. The circumstances disclosed and the atmosphere of the case tend strongly in corroboration of plaintiff in all material respects, and we find no sound basis for the claim that the verdict was the result of passion or prejudice. The fact that plaintiff made no claim to an interest in the royalty contract until the lapse of some three years is not conclusive against him. His explanation thereof, based in the main upon his relations with defendant, he being a subordinate of defendant in the employ of the Rogers-Brown Ore Co., was satisfactory to the trial court, and the

delay in asserting his rights is not conclusive as matter of law. Lamberton v. Youmans, 84 Minn. 109, 86 N. W. 894.

2. We find no substantial merit in the contention that the oral agreement of partnership was within the statute of frauds and void. The agreement was entered into on May 26, and, though not in writing, the final act in consummation of the relation was the royalty contract with the Pine Tree Co., and that was entered into in the month of October following. It was fully performed within a year by plaintiff, through the conveyance of the land to the railway company, and defendant is in no position to invoke the statute, if it can be, said to be applicable at all. Stitt v. Rat Portage Lumber Co. 98 Minn. 52, 107 N. W. 824; 3 Dunnell, Minn. Dig. § 8859, et seq.

Order affirmed.