# CHARLES S. BATCHELDER AND ANOTHER v. CITY OF FARIBAULT.[1]

April 10, 1942.

Nos. 33,024, 33,078.

*Everett F. Malluege* and *Lucius A. Smith,* for appellant.
*A. J. Rockne* and *R. O. Sullivan,* for respondents.

HOLT, JUSTICE.

Findings of fact and conclusions of law were made and filed in favor of plaintiffs. Defendant moved in the alternative for amended findings or a new trial. From the order denying a new trial, defendant appeals. It appeals also from the judgment entered on the findings. The two appeals were consolidated.

The main facts are: July 1, 1882, defendant issued five $1,000 bonds, numbered 46, 47, 48, 49, and 50, to the Minnesota Central

[1] Reported in 3 N. W. (2d) 778.

Railroad Company, or bearer, due July 1, 1899, with interest at four per cent payable semiannually. July 22, 1899, defendant's city council passed a resolution to retire or refund these bonds as of July 1, 1899, by issue of its five $1,000 bonds, for value received, payable to bearer on July 1, 1904, with four per cent interest coupon attached payable semiannually, the bonds being numbered 6, 7, 8, 9, and 10. October 12, 1903, defendant's city council levied a tax on the taxable property within its limits sufficient to meet these bonds when due. The $5,000 tax so levied was collected by the county treasurer and transmitted to the city treasurer of defendant. The bearer bonds numbered 6, 7, 8, 9, and 10 have not been paid, but all the attached interest coupons were paid.

The father of plaintiffs died in 1910, and his estate was duly probated and distributed within a year thereafter. Plaintiffs are now his only surviving heirs, the widow of the father being dead. Plaintiffs' father was an attorney practicing law in defendant city for over 50 years. Plaintiff Charles S. was his law partner since 1889. In looking over old deeds and papers in the safe used by the law firms of Batchelder & Buckham, Batchelder & Batchelder, and by Charles S. Batchelder, these five bearer bonds were discovered in 1929. When so discovered, plaintiff Charles S. showed them to the city treasurer, recorder, mayor, city attorney, and some members of the city council, but no formal demand for payment was made, nor any claim filed against defendant until in February 1938, and on March 22, 1938, this action was started.

The court found that plaintiffs were the owners of the bonds; that plaintiffs had not been guilty of laches in not sooner demanding payment of the bonds; and that their payment was not barred by the statute of limitations. Defendant's assignments of error challenge each of these findings.

These five bearer bonds so discovered we think were rightly found to be owned by plaintiffs. There is no claim that they had been paid, or are not outstanding obligations of defendant. Had the safe held them for others than the users of the safe, it is more than likely that a demand would have been made for them

within a reasonable time after their due date. Their production by plaintiffs was *prima facie* proof of ownership.

Since we have concluded that the statute of limitations determines the appeal, it will not be necessary to consider the finding of no laches on the part of plaintiffs.

The original bonds were issued by defendant to the Minnesota Central Railroad Company, payable to it or bearer. They were express contract obligations of defendant to pay a specified sum of money on July 1, 1899, and come within Mason St. 1927, § 9191(1), and any action thereon was barred six years from their due date (§ 9185). The bearer bonds in suit were due and payable July 1, 1904, and an action then accrued to the holder of the bonds, and became barred six years from that date by the statute referred to. Plaintiffs concede the statute of limitations to be a defense as available to the city as to an individual. 4 Dunnell, Dig. & Supp. § 5601.

However, they contend that subd. 7 and not subd. 1 of § 9191 applies; that the money collected by the county treasurer upon the tax levy made by the city in 1903, on being transmitted to the city treasurer, became a trust fund of which defendant was trustee and the holder of these bearer bonds the *cestui que* trust. So plaintiffs assert that a cause of action did not accrue until the defendant repudiated the trust, which did not occur until payment was refused when presented for payment early in 1938, and when the county treasurer had long before collected and paid over to the city treasurer the taxes levied to meet these bonds. So far as the defense of the statute of limitations goes, it is difficult to discover any material difference between a case where a municipality had made no effort to levy a tax to pay or retire its bearer bonds and a case, like the present, where it levied, collected, and set aside a fund to pay in full. There is no hint in this record of any fraud, concealment, neglect of duty by defendant or its officers which would toll the running of the statute of limitations.

But plaintiffs attempt to predicate a trust relation between defendant and the holders or owners of these bearer bonds by virtue

of these statutes, *viz.*, L. 1877, c. 106, as amended by L. 1878, c. 45 (the amendment by L. 1878, c. 46, has no bearing on any feature in this appeal) (G. S. 1878 [2 ed.] c. 34, §§ 92 to 105, inclusive) ; L. 1893, c. 148; and R. L. 1905, § 793.

L. 1877, c. 106, § 4 (the law under which the bond issue of 1882 was authorized), provides for an agreement between a city and a railroad as to the road to be constructed, the amount of the bonds to issue in aid thereof, and an election to authorize the bonds agreed upon by the electors of the city. Section 6 provides that no bonds may be issued or delivered until the road for the aid of which the bonds were voted has been completed. And § 9, the one relied on by plaintiffs for the creation of a trust, reads:

"Every * * * city * * * shall be severally liable in law, faithfully, promptly and at maturity, to pay and discharge the principal and interest upon every such bond issued by it, and the faith of every such * * * city * * * shall, by the issue of such bond or bonds, be and stand irrevocably pledged to the prompt discharge of every such liability; and every such * * * city * * * shall annually levy and collect a tax on all taxable property therein, as indicated by the assessment roll or rolls for the payment of all moneys to become due upon such bonds, whether for principal or interest, in addition to all other taxes, and the money so raised shall be kept as a separate fund, and strictly applied to that purpose."

Section 10 makes any city official liable to an aggrieved party for failure to discharge a duty in respect to such bonds. It is to be noted that while the city is required to keep the proceeds of the tax received separate and intact for the payment of the bonds, it is not charged with any duty in regard thereto other than that of paying them upon presentation. Of course, it was the holder's right and privilege to present the bonds to the city treasurer for payment at their maturity. A cause of action then accrued whether or not the bonds were presented for payment.

But the bonds, the basis of the instant case, were not issued under the authority of L. 1877, c. 106, as amended by L. 1878, c. 45. The city was evidently not prepared to pay the original bonds when due, so in July 1899 it availed itself of L. 1893, c. 148, to retire or pay the original bonds Nos. 46, 47, 48, 49, and 50. We conclude that c. 148, not c. 204, of L. 1893, is the statute under which the bonds in suit were issued. Thereby the city council is given the authority to determine the necessity of issuing bonds where previously issued bonds for any lawful purpose are outstanding, which bonds are valid existing indebtedness against the city, provided such issued bonds shall not be made payable more than ten years from the date of issue and draw no higher interest than the bonds refunded. It is plain that the bearer bonds which are the basis of this suit were not to be substituted for the original bonds issued; but that the proceeds from their disposal or sale were to pay off or discharge the original unpaid bonds. The bearer bonds in question were not delivered to or payable to the Minnesota Central Railroad Company. A photostatic copy of one of these $1,000 bonds reads as follows on its face:

"$1,000.                                                    No. 6
"BOND OF THE CITY OF FARIBAULT
(Design)

"Know all men by these presents, that the City of Faribault, in the County of Rice, and State of Minnesota, is justly indebted, and, for value received, promises to pay to the bearer the sum of one thousand dollars in gold coin of the United States of America of the present weight and fineness, on the 1st day of July, A. D. 1904, with interest thereon from the date hereof till fully paid, at the rate of four per cent. per annum, payable semi-annually, in like gold coin, on presentation and surrender of the annexed coupons, principal and interest payable at Faribault, Minnesota. And for the payment of said principal and interest the faith and credit of said city are hereby pledged.

"In Witness whereof the corporate seal of said City of Faribault has been hereunto affixed and these presents signed by the Mayor

and attested by the City Recorder of said city this first day of July, A. D. 1899,

"(SEAL)                                                    R. A. MOTT
"Attest, J. E. SANDERS
          "City Recorder.                    .                    Mayor"

The following wording appears on the back of said bond:

"No. 6
STATE OF MINNESOTA
CITY OF FARIBAULT
BOND $1000
Due July 1st, 1904
Interest 4 per cent.   Payable
January 1st and July 1st.

---

\*   \*   \*   \*   \*

"Be It Resolved by the Common Council of the City of Faribault:

"That bonds of the City of Faribault be issued to the amount of five thousand dollars for the purpose of refunding the indebtedness of said City on the bonds thereof issued on the first day of July A. D. 1882, and which became due as follows, to-wit:   Five bonds, numbered respectively, 46, 47, 48, 49, and 50, for one thousand dollars each, payable July 1st, 1899, to the Minnesota Central Railroad Company or bearer.

"Said bonds shall be in denomination of one thousand dollars each and bear interest from date thereof until paid, at the rate of four per cent. per annum.   Interest payable semi-annually, and said bonds shall be dated July 1st, 1899, and be payable to bearer at Faribault, Minnesota, on the first day of July A. D. 1904, and have interest coupons attached.   Said bonds shall be payable in gold coin of the United States of America, of the present weight and fineness.

"That the Mayor of said city be, and he is hereby authorized and directed to sign said bonds and coupons, and that the city recorder be and he is hereby authorized and directed to attest

said bonds and coupons, and attach the corporate seal of said city to said bonds.

"Passed July 22nd, 1899.

"R. A. MOTT,

"President of Common Council

"Attest:  Approved,

"J. E. SANDERS,  R. A. MOTT,

"City Recorder.  Mayor

(SEAL)"

It is to be noted that there is nothing in L. 1893, c. 148, with respect to keeping separate and intact the taxes levied and collected to meet bearer bonds issued thereunder. Nor is there anything to that effect either on the face or back of the bond themselves.

Plaintiffs also contend that R. L. 1905, § 793, withdrew these bonds from the statute of limitations. It reads:

"Notwithstanding the repeal by the Revised Laws of statutes relating to bonds theretofore issued by any municipality, the obligations of such municipalities thereunder, and the duties of all public officers in any way relating thereto, shall continue in respect to such bonds until the same are fully paid."

While a great many statutes were expressly repealed by R. L. 1905, c. 108, L. 1877, c. 106; L. 1878, c. 45; and L. 1893, c. 148, were left in full force and effect. It is unthinkable that the legislature by § 793 intended to exclude all outstanding municipal bonds from the operation of the statute of limitations. The purpose of the statute was to leave outstanding municipal bonds wholly unaffected as to validity and enforcement notwithstanding the repeal of the statutes under which they were issued.

We think Stillwater & St. P. R. Co. v. City of Stillwater, 66 Minn. 176, 68 N. W. 836, 837, is controlling here. There the city had condemned for street purposes two tracts of land belonging to the railroad. On May 2, 1882, the city appropriated and set apart in its treasury the compensation awarded. In February

1895, the railroad, for the first time, furnished the city with an abstract to the tracts of land, showing it to be the owner, and demanded the compensation awarded. Upon refusal, the suit was brought. Recovery was denied on the ground that the statute of limitations had barred an action in court. There, as here, the trust fund theory was urged and the position taken that the action did not accrue under § 9191(7) until a demand of payment and a refusal or repudiation were made. The court there said that because the money set apart to pay compensation for the land taken was "held in trust for the owner," it did not follow that it fell within subd. 7 then reading substantially as in § 9191. The decision states [66 Minn. 179]:

"While presenting to the defendant the abstract of title was a condition precedent to bringing the action, yet it was no part of the cause of action, but merely a part of or one step in the remedy. It does not delay the running of the statute of limitations [citing cases]."

The fund held by the city treasurer was not held for investment or any continuing object. It was simply held to pay these bearer bonds on their due date. To the above we cite the exhaustive opinion of Chancellor Kent in Kane v. Bloodgood (N. Y.) 7 Johns. Ch. Rep. 90, where on p. 111 [11 Am. D. 417], the chancellor sums up his conclusion on authority and policy in this rule, "that the trusts intended by the Courts of equity, not to be reached or affected by the statute of limitations, are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of this Court." See also Thatcher v. Detroit Trust Co. 288 Mich. 410, 285 N. W. 2 (annotated, 122 A. L. R. 282).

Of the authorities cited and discussed by plaintiffs, we need refer to but two which seem to be the ones most strongly depended on by them, viz., New Orleans v. Warner, 175 U. S. 120, 20 S. Ct. 44, 44 L. ed. 96, and Keyes v. City of Tacoma, 12 Wash. (2d) 54, 120 P. (2d) 533. The Warner case should be considered

in connection with Peake v. New Orleans, 139 U. S. 342, 11 S. Ct. 541, 35 L. ed. 131, and Warner v. New Orleans, 167 U. S. 467, 17 S. Ct. 892, 42 L. ed. 239, involving city warrants issued in drainage proceedings originating in acts of the legislature in 1858 and followed by subsequent acts up to 1876. It is held in New Orleans v. Warner, that the city warrants, issued for the purchase of the drainage plant, and franchise of Ship Canal Company, the then drainage contractor, were not obligations to which the prescriptive laws, or statute of limitations, of Louisiana applied, and that by the purchase the city became a voluntary trustee of the funds to be raised by assessments of benefited property. From the first the city's faith and credit were not pledged to pay for the drainage, but rather payment was to come from the assessments of the property in the drainage district, including city streets and public grounds. The same is the case with respect to the nonliability of a city for local improvement bonds in the state of Washington. The Keyes case cited was a suit on bonds issued by the city of Tacoma for local improvements November 23, 1907, payable solely from special assessments levied against benefited property in the local improvement district, due on or before November 23, 1917. There being enough collected on the assessments to pay the bonds before the due date, they were called for payment by published notice. But the bonds in suit, having been mislaid by the plaintiffs, were not found until April 1941, when presented for payment. The city had transferred the money in the special assessment fund to pay these bonds ten years after their due date. The suit was brought in 1941. The law is settled in that state that such funds for the payment of local improvement bonds are trust funds, of which the city is trustee for the cestui que trust holder, and that the statute of limitations does not run against these. The bonds in Bessemer Inv. Co. v. City of Chester (3 Cir.) 113 F. (2d) 571, and Brown-Crummer Inv. Co. v. City of Miami, Okl. (D. C.) 40 F. (2d) 508, were of the same character as in the Keyes case.

The cases of Fallon v. Fallon, 110 Minn. 213, 124 N. W. 994, 32 L.R.A.(N.S.) 486, 136 A. S. R. 464 (money entrusted to a brother until demanded), and Lamberton v. Youmans, 84 Minn. 109, 86 N. W. 894 (an express trust), are not in point where the basis of the suit is bearer bonds, due at a named date, issued for value as the primary obligation of the city.

The order and judgment are reversed.

Mr. Chief Justice Gallagher, absent on account of illness, took no part in the consideration or decision of this case.