CHRISTOPHER J. JOHNSTON v. WILLIAM E. JOHNSTON.[1]

February 11, 1909.

Nos. 15,870—(216).

**Limitation of Actions—Discovery of Fraud.**

The statute of limitations does not commence to run against an action to set aside a partnership accounting on the ground of fraud until discovery of the fraud.

**Same—Recovery of Trust Funds.**

The statute of limitations commences to run against an action for the recovery of trust funds upon the performance of the trust, or when the trustee repudiates the trust, and the cestui que trust is notified there-

[1] Reported in 119 N. W. 652.

of. The mere lapse of time, without inquiry into the trusteeship, does not of itself constitute such laches as to preclude recovery.

**Item Barred by Limitation.**

The statute of limitations began to run against the $4,000 item involved in this case from the time respondent discovered that it had been paid to appellant's intestate.

Action in the district court for Winona county against the administrator of Frank A. Johnson to rescind an agreement of settlement entered into in October, 1890, between plaintiff and defendant's intestate, and for an accounting in the matters of a partnership between plaintiff and said Frank A. Johnston relating to the mining business, and for an accounting in matters of said intestate's agency for plaintiff, on the ground that such settlement was procured by the false representations of the deceased to the plaintiff. The facts are stated in the opinion. The case was tried before Snow, J., who made findings and ordered judgment in favor of plaintiff in the sum of $25,082.32, and that on the payment thereof plaintiff must quitclaim to defendant one half of his interest in certain mines and mill sites. From the judgment entered pursuant to the findings, defendant appealed. Modified.

*Fitzpatrick & Buck,* for appellant.

The mere fact that the aggrieved party did not actually discover the fraud will not extend the statutory limitation, if it appears that the failure sooner to discover it was the result of negligence and inconsistent with reasonable diligence. First National Bank of Shakopee v. Strait, 71 Minn. 69; Dunn v. Taylor, 42 Tex. Civ. App. 241; Boren v. Boren, 38 Tex. Civ. App. 139; Arkins v. Arkins, 20 Colo. App. 123; Donaldson v. Jacobitz, 67 Kan. 244; Dole v. Wilson, 39 Minn. 330; Morrill v. Madden, 35 Minn. 493; Marks v. Evans, 129 Cal. 18; Goggins v. Risley, 13 Pa. Sup. Ct. 316; Vodrie v. Tynan (Tex. Civ. App.) 57 S. W. 660; School District of DeWeese, 100 Fed. 705, 708; Nave v. Price, 108 Ky. 105; Hughes v. Littrall, 75 Me. 573; Rogers v. Brown, 61 Mo. 187, 189; Clark v. Van Loon, 108 Iowa, 250; Reisse v. Clarenbach, 61 Mo. 310; Laird v. Kilbourne, 70 Iowa, 83; Gebhard v. Sattler, 40 Iowa, 152; Bishop v. Knowles, 53 Iowa, 268; Wright v. Davis, 28 Neb. 479; Nash v. Stevens, 96 Iowa, 616; Hawley v. Page,

77 Iowa, 339. Plaintiff contends that these authorities are not applicable to this case for the reason that the relation of partners existed between the two and that Frank was bound to disclose the truth about the partnership property. There is nothing in the evidence that any of the property owned by Frank privately and personally belonged in any manner to the partnership. The partnership was formed for the purpose of locating mines in Idaho and selling interests in those mines to the "tenderfeet" in the East, and that was its only purpose. Frank's alleged false and fraudulent statements were concerning his own ability to pay his indebtedness to his partner arising out of the partnership transactions, and were no fraud upon his partner as such.

The statement by Frank to the agent of his brother that everything was gone, both his own property and his brother's, was evidence and notice to the plaintiff of a repudiation or of a breach of trust on his part. The relationship, from that moment, of trustee and cestui que trust ceased to exist. Mrs. Johnston and the plaintiff then knew that Frank had not been carrying out the terms of the trust. Frank became the debtor to his brother of the amounts then and there settled upon and admitted, and the statute of limitations commenced to run at that time in his favor. Wilson v. Welles, 79 Minn. 53; Smith v. Glover, 44 Minn. 260, 28 Am. & Eng. Enc. (2d Ed.) 1134, and cases there cited.

*Brown, Abbott & Somsen,* for respondent.

The plaintiff's position on the question of the statute of limitations is: (1) That the relation of Christopher and Frank as regards the partnership transactions was one of trust; that each owed the other the utmost good faith in reference to it. (2) That by means of false statements which constituted a violation of this obligation, Frank induced the plaintiff to make an agreement releasing him from all liability growing out of the partnership relation. (3) That the falsity of these statements was not discovered until about the time of the commencement of this action and consequently that the statute has not run against the action to set aside the release. (4) That if the statute of limitations has run against an action for accounting upon the partnership transactions, the plaintiff was induced to refrain from bringing

his action for an accounting solely by reason of defendant's fraud, and that when the release has been rescinded the defendant is estopped by the settled principles of equity from asserting the statute of limitations. (5) That all moneys sent to Frank for investment were held by him under an express trust, and there has never been an accounting because of the false statements of Frank, to the effect that the property held in trust was "all gone." (6) That Frank is estopped to assert the statute of limitations as against the action for accounting after having induced the delay in demanding the accounting. (7) That there has been no repudiation of the trust and the statute has not commenced to run against it.

The statute of limitations did not run against the action to rescind the release. R. L. 1905, § 4076, subd. 6. The defendant is estopped to assert the statute of limitations against the accounting. Can a partner misrepresent the character, condition or existence of partnership property to his copartner, and by means of such misrepresentation procure a release of all claims and demands growing out of the partnership relations for an inadequate consideration, and then plead the statute of limitations when his fraud is discovered after the period of six years? Can a trustee falsely represent that all the trust property is lost and gone, and plead the statute of limitations as a defense to an action for an accounting after the expiration of six years after the making of the false statement? We do not think the statute of limitations has any application to the trust transactions, but assuming for the sake of the argument that it has, we will place the two propositions in the same category and argue them together. Good faith of the trustee toward the cestui que trust is one of the fundamental requirements of the trust relation. A court of equity will not permit a trustee to deceive the cestui que trust as to his profits, and then plead the statute of limitation because the fraud is not discovered for six years. Ludington v. Patton, 111 Wis. 208.

This trust was an express continuing trust. No restriction was placed upon Frank as to the nature of the investments which he should make, but it was expressly agreed that he should take this money and invest it for the benefit of Chris and return it to him. This was not a trust implied, but one created by the agreement of the parties and hence comes within R. L. 1905, § 4076, subd. 7. Wilson v. Welles, 79

Minn. 53; Stillwater & St. P. R. Co. v. City of Stillwater, 66 Minn. 176. At the time Susan came to Winona Frank had not repudiated this trust or neglected to discharge it, or claimed to have fully performed it, and hence the statute had not commenced to run under subdivision 7. Nor had it commenced to run at all. Smith v. Glover, 44 Minn. 260; Donahue v. Quackenbush, 62 Minn. 132; Thompson v. Crosby, 62 Minn. 324; Lamberton v. Youmans, 84 Minn. 109.

A trust of this nature is not within the statute of limitations because the possession of the trustee is presumed to be the possession of the cestui. Speidel v. Henrici, 120 U. S. 377, 386.

LEWIS, J.

Respondent, Christopher J. Johnston, and Frank A. Johnston, deceased, were brothers. The former resided in the territory of Utah in 1878, and Frank in the city of Winona. During that year they entered into a copartnership agreement for the purpose of acquiring, locating, developing, and disposing of mining properties. In 1890 the partnership was dissolved, at which time Frank was indebted to Christopher in a large amount of money growing out of the partnership business, and also in a large amount which had been intrusted to him for investment. In full settlement of the partnership indebtedness Frank paid to respondent the sum of $3,000, deeded to him certain property in Winona, and released all of his interest in the mining property held by the partnership, and was thereby released from all obligations by an instrument in writing. Nothing further transpired until the decease of Frank on August 24, 1905. William E. Johnston having been appointed administrator of the estate, this action was commenced for the purpose of setting aside the settlement and release, and to recover the full amount of the partnership indebtedness, with interest, upon the ground that respondent was induced to enter into the settlement and to execute the release upon the fraudulent representation by Frank that he was insolvent and unable to pay the amount in full, or any other amount than as provided by the terms of the release, whereas he was worth at that time at least $60,000, and also to recover the trust fund.

The trial court found that the partnership was formed in 1878 and continued until 1890, during all of which time respondent was engaged

in acquiring and developing mining properties for the benefit of the partnership, and that Frank was engaged in making sales thereof; that at the time the partnership was dissolved, October 20, 1890, Frank was indebted to respondent in the sum of $20,011.42 on account of moneys made in the partnership business; that from time to time, from 1882 to 1886, inclusive, respondent intrusted to his brother at Winona for investment the sum of $19,500, of which amount Frank invested $9,400 in the name of respondent, but the balance of $10,100 so intrusted to him was never invested in any way and was never accounted for up to the time of his death; that prior to the month of October, 1890, respondent had made repeated efforts to secure a settlement with his brother, and, being unable to do so, he designated his wife, Susan M., to go to Winona for the purpose of making settlement, if possible; that Mrs. Johnston arrived at Winona, and spent fifteen days in endeavoring to arrange a satisfactory settlement of the partnership business and trust affairs; that at such time Frank did not deny that he owed the amounts claimed by his brother, but represented to Mrs. Johnston that the moneys received by him in the sale of partnership property and the moneys intrusted to him for investment were lost; that to settle the partnership account he was unable to pay any more than $3,000 in money ($2,000 of which he would have to borrow) and turn over two certain lots in Winona, with a small dwelling thereon; that Mrs. Johnston relied upon such representations, accepted the proposition, entered into an agreement of settlement, and signed an instrument in writing, of date October 20, 1890, which instrument acknowledged the receipt of $2,000 in cash, a note for $1,000 due March 1, 1891, at eight per cent., and a deed of two certain lots in Winona, in settlement of all claims arising out of the partnership transactions. The instrument also released respondent's interest in a certain block in Winona, and Frank relinquished to respondent all claims to the mining properties involved in the partnership, with two exceptions. The court found that this writing did not cover, refer to, or affect the claim of respondent against his brother on account of the funds sent in for investment.

It was found that Frank's representations to Mrs. Johnston that he was poor and unable to pay more than the amount stated in the agreement were false, and known to him to be so; that in fact he was

the owner of a large amount of property, and was worth at least the sum of $60,000. The court also found that an examination of the records at the register of deed's office would have disclosed the fact that such representations were not true, and that Frank was the owner of a large amount of real estate; that Mrs. Johnston made no examination of the records, but confined her inquiry to some of Frank's intimate friends residing in Winona, by whom she was told that no one knew how much he owed or how much he was worth. These representations were reported to respondent by his wife, accepted by him as true, and he therefore refrained from making additional investigation until after the death of his brother. The court directed judgment for respondent for the sum of $25,082.32, upon the payment of which sum respondent was directed to deed to the administrator the undivided one-half interest to all of the partnership mining property.

The findings of the court settle whatever dispute there may have been with reference to the facts. It is immaterial whether the settlement made October 20, 1890, was a complete partnership accounting, or whether Frank accepted the statement of accounts as presented by Mrs. Johnston without presenting his side of the account. The findings of the court foreclose any inquiry into that question. That the partnership was dissolved, and that, upon Frank's admission, he was indebted to his brother in the sum of at least $20,011.42, and that the mining property released by Frank was of no value, was established by the evidence. That Frank admitted the indebtedness and falsely represented his ability to pay it is fully settled by the findings.

However, appellant seriously contends that Mrs. Johnston was not justified in accepting the representations as to his ability to pay the full amount. A careful examination of the records in the register's office would have disclosed what property belonged to Frank Johnston at that time, and by following up the inquiry knowledge might have been obtained as to its value. Perhaps a persistent inquiry among the citizens of Winona might have disclosed that he was financially responsible. But Mrs. Johnston was dealing with her brother-in-law, whom her husband had implicitly trusted for a long period of years, not only by permitting him to attend to all of the partnership affairs, but also by intrusting to him for investment money to the extent of $19,-000. Mrs. Johnston was a stranger in Winona, not acquainted with

the method of ferreting out property through the public records, and to a certain extent she was in a hostile country, among the friends of the other party. Although she did not appreciate this condition, the answers to her inquiries from Frank's friends conveyed the impression to her that his representations might be true.

The evidence is ample to support the court's conclusion that Mrs. Johnston accepted the statements of her brother-in-law in perfect good faith, and was not required to prove the contrary by running down the records. The period of time elapsing from 1890 to 1905, when the fraud was first discovered, was a long time, and, the party charged with the fraud being dead, the evidence was examined with great care by the trial court, and the findings as to the amount due are based upon documentary evidence. The relation of the parties was of such confidential character, and the method of conducting the business was such, that respondent was not guilty of laches in permitting the time to pass without investigation. Respondent was a mining man, for a large part of the time employed in the mountains, leaving the transactions of business matters largely to his wife. Nothing occurred to challenge the correctness of the representations as to Frank's ability to pay his indebtedness until after his death. In 1899 respondent and his wife visited Winona, met the brother, and had conversation with him with respect to his business affairs; but nothing at that time occurred to put them upon inquiry. Respondent could not be called upon to repudiate the transaction until he knew of facts which would lead a prudent man to make inquiry.

The only incident of importance bearing on the question occurred at the very outset, in 1890. At that time the brother represented to Mrs. Johnston that, in addition to the sum of $3,000 to be paid, she would be able to collect $4,000 from a Mr. Coleman of La Crosse. After the settlement was made and the agreement in writing signed, Mrs. Johnston went to La Crosse for the purpose of collecting this amount, and found that it had already been paid to Frank, which he admitted. At this time she had notice that a misrepresentation had been made to her. She had reason for being influenced by his apparent financial distress, and the conduct of respondent and his wife showed beyond doubt that they believed their brother was not able to pay the full amount of the indebtedness. The law on this subject is fully set-

tled. Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448, 10 L. R. A. 606; Erickson v. Fisher, 51 Minn. 300, 303, 53 N. W. 638; McCarty v. New York Life Ins. Co., 74 Minn. 530, 77 N. W. 426; Eggleston v. Advance Thresher Co., 96 Minn. 246, 104 N. W. 891.

Respondent was entitled to set aside the agreement of settlement on the ground of fraud, and under the provisions of subdivision 6, § 4076, R. L. 1905, the statute of limitations did not commence to run against that right until the fraud was discovered. The following actions have been held to come within this statute: Actions to set aside fraudulent conveyances. Duxbury v. Boice, 70 Minn. 113, 72 N. W. 838. An action on money appropriated by an agent. Cock v. Van Etten, 12 Minn. 431 (522). With like effect the statute applies to contracts of settlement between partners; hence the statute did not commence to run until the fraud was discovered.

What has been said with reference to the false representations concerning the partnership indebtedness, and respondent's reliance thereon, has application in determining the relation of the parties with reference to the trust funds. The amount of money sent by respondent to his brother Frank for investment was pursuant to an agreement entered into on one of Frank's visits to respondent in the West. The money was sent from time to time, but no statement was ever made whether it was invested, and no account was ever rendered. When the partnership settlement was made in 1890, Frank claimed that all that money was lost, and no effort was made to secure a settlement of that account. If respondent and his wife were justified in relying upon Frank's statements as to his ability to pay the partnership indebtedness, there is no reason for assuming that they waived any of their rights with respect to the trust money simply because they did not insist upon settlement at that time. If, as respondent was informed, Frank was unable to pay any amount in cash without borrowing, he was fully justified in accepting the situation and in not pressing the payment of the trust funds.

The record fails to disclose the occurrence of anything during the succeeding years which suggests that Frank ever attempted to deny the amount due, or to repudiate the trust. The trust was expressly created by contract. Subdivision 7, § 4076, R. L. 1905, provides that an action to enforce such a trust, or to compel a trustee to account,

must be brought within six years, where the trustee has neglected to discharge the trust or claims to have fully performed or repudiated the trust relation; but the statute does not begin to run in such cases until the trust has been performed, or until the trustee repudiates the relation, and the cestui que trust has received notice thereof. Wilson v. Welles, 79 Minn. 53, 81 N. W. 549. The mere lapse of time without inquiry as to the condition of the trust by the cestui que trust does not, of itself, constitute such laches as to prevent him from enforcing the trust. Lamberton v. Youmans, 84 Minn. 109, 86 N. W. 894.

However, we find ourselves unable to accept the views of the learned trial court upon one point, viz., with respect to the $4,000 item, with reference to which the court seems to have been of opinion that the statute did not run against it for the reason that the release operated upon the whole account, and, the release being rescinded upon the ground of fraud, the whole account was revived. But the $4,000 item is not mentioned in the release, and, although Mrs. Johnston may have been induced to execute the release in part upon the belief that she would be able to collect the $4,000, upon going to La Crosse she discovered that she had been deceived as to that item, and was then put in possession of every fact to enable her to take advantage of the fraud. Respondent might have repudiated the entire settlement, or, within the statutory limit, he might have commenced an action to recover that amount from Frank. Respondent elected to stand upon the settlement and to accept his brother's promise to make the amount good. The time within which to enforce respondent's rights as to this item expired within six years from the date of discovering the fraud, and the judgment must be modified accordingly.

So ordered.