JESSIE A. JONES AND ANOTHER v. ALMOND L. HAMMOND.[1]

July 2, 1926.

No. 25,466.

**When six-year statute of limitations in actions for accounting or implied trust respecting land begins to run.**

1. Subdivision 7 of sec. 9191, G. S. 1923, imposing a six-year limitation upon actions "to enforce a trust or compel a trustee to account, where he has neglected to discharge the trust, or claims to have fully performed it, or has repudiated the trust relation," applies only to express, technical and continuing trusts of the kind which were originally cognizable only in a court of equity. Actions for an accounting and to impress upon land a trust arising by implication under a contract are governed by subdivision 1 of sec. 9191, G. S. 1923, relating to actions "upon a contract or other obligation, express or implied" and the six-year limitation began to run with the accrual of plaintiff's right to demand an accounting or enforce a trust.

**Averments of complaint negative running of statute from death of either party.**

2. In view of the fact that the complaint avers that the original contract has been treated by the heirs, legatees and devisees of the original parties as continuing and binding upon them notwithstanding the death of the original parties, which otherwise would have terminated it for all purposes, it cannot be considered that the statute of limitations began to run upon the death of either of them.

Limitation of Actions, 37 C. J. p. 795 n. 42, 44; p. 910 n. 67; p. 923 n. 30 New.

[1]Reported in 209 N. W. 864.

Plaintiff appealed from an order of the district court for Murray county, Nelson, J., sustaining a general demurrer to the complaint in an action for an accounting. Reversed.

*Roberts, Strong, Myers & Covell* and *E. J. Jones,* for appellants.

*C. T. & C. B. Howard, Whitney & Whitney* and *Winter & Winter,* for respondent.

STONE, J.

Appeal from an order sustaining a general demurrer to a complaint declaring on a written contract for the "purchase and sale of land on joint account." The contract was entered into in 1890 between L. E. Jones and A. T. Hammond. It provided that the lands purchased thereunder should be paid for by Hammond and the deeds taken in his name. When sales were made he was to be repaid the cost of the land together with all advances by him for taxes, improvements and interest. He was to have interest at stated rates and the net profits as well as losses were to be divided equally between the parties. Hammond assumed the initial obligation to pay all necessary taxes and interest.

The contract also provided as follows:

"In case any money shall be realized from rent of any kind, the same shall be paid to the said Hammond, who shall deduct such sum from the cost of said land and shall treat the same as a payment thereon.

"Said Jones shall have the privilege to pay said Hammond at any time, one-half the cost of any part of the said lands and be entitled to receive from the said Hammond and wife a deed for the undivided one-half thereof."

The complaint alleges that pursuant to the contract and in 1900 there was purchased the half section of Murray county land now in controversy, the title having been taken in the name of Hammond; and that Hammond died in 1912 and Jones not later than 1914 without a sale of the land in question. Plaintiffs are the heirs at law of Jones and have succeeded to his interest, if any, in the contract and the land under his will. Defendant is the heir

at law and through descent and conveyances from the other heirs of Hammond has succeeded to the title of the latter.

It is also alleged that from the rents and profits of the land, "since the purchase thereof for the said joint account," the "said A. T. Hammond and the said Almond L. Hammond have received sufficient moneys and property to more than pay the original purchase price for said premises, together with all moneys paid out for taxes, improvements and interest;" that an accounting has been demanded from the defendant and that he has not only refused to comply but declines to recognize that plaintiffs have any interest in the property or its proceeds.

1. It is not necessary to decide just what the original contract should be called. Counsel concede that it is one of joint adventure if not of partnership and that when the land in question was purchased and the title taken in the name of Hammond it was impressed with a trust in favor of Jones. The contract, except for the allegations of the complaint hereinafter quoted, would have to be considered as terminated by the death of Hammond in 1912. The time had then come for an accounting under the contract. Apparently none was ever had. The complaint does not negative the purchase of other lands or that as a result of such transactions Jones was indebted to Hammond. It is not alleged that on the latter's death profits had accrued, any portion of which had become due or could become due to Jones. In that situation the demurrer was sustained—apparently upon the ground that the statute of limitations had run against plaintiffs' damands for an accounting and the conveyance of an undivided half of the land.

Subdivision 7 of sec. 9191, G. S. 1923, prevents the running of the six-year limitation until the repudiation of "the trust relation" by defendant. That subdivision applies literally to actions "to enforce a trust or compel a trustee to account" but, as construed by this court, it "applies only to express, technical, and continuing trusts, of the kind which were cognizable exclusively in a court of equity." S. & St. P. R. Co. v. City of Stillwater, 66 Minn. 176 (178), 68 N. W. 836, 837, citing Smith v. Glover, 44 Minn. 260, 46 N. W.

406, and Donahue v. Quackenbush, 62 Minn. 132, 64 N. W. 141, as illustrative of its application. The opinion proceeds to the effect that subdivision 7 "has no application to cases of implied trusts and those which the law forces on a party." In such cases "the statute of limitations runs from the time the act was done by which the party became chargeable as trustee by implication; that is, from the time when the cestui que trust could have enforced his right of suit." Any other holding, it was pointed out, would lead to endless exceptions "for the instances in which an implied trust may be raised are almost innumerable."

So subdivision 7 does not apply to this case, for the trust sought to be enforced is not express but implied. The applicable statute is subdivision 1 of sec. 9191, G. S. 1923, governing actions "upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed." At an early day that provision was held to be the one which governs actions for a partnership accounting. McClung v. Capehart, 24 Minn. 17. There is nothing to the contrary in Johnston v. Johnston, 107 Minn. 109, 119 N. W. 652. There a contract, not of partnership but for dissolution of one and the settlement of its accounts, was set aside for fraud. Under subdivision 6 of the statute now under consideration, the limitation did not begin to run until discovery of the fraud by the aggrieved party. A secondary issue arose over money placed by one of the parties with another for investment under an express agreement. "The trust was expressly created" by that contract, said Mr. Justice Lewis. So it was held following Wilson v. Welles, 79 Minn. 53, 81 N. W. 549, that subdivision 7 of the statute applied.

In this case, the statute commenced to run at the latest upon the appointment of the administrator or executor of the estate of L. E. Jones, and probably even from the day of his death for then his heirs or legatees, the original contract being terminated, had the right to call upon Hammond for an accounting.

2. We would agree that plaintiffs' claims are barred were it not for the allegations of the complaint:

"That after the purchase of said real estate * * * the said L. E. Jones had the management thereof and proceeded to rent the

said premises and to erect improvements thereon and to collect the rents and profits therefrom and accounted to the said A. T. Hammond for all the rents and profits therefrom as provided in the said contract.

"That after the death of the said L. E. Jones, this plaintiff, L. Hollister Jones, took up the management of the said property and proceeded to rent the same and make repairs and improvements and to collect the income therefrom, and after the death of the said A. T. Hammond the said plaintiff accounted to the defendant for the profits from the said real estate.

"That all of said accounting by the said L. E. Jones and after his death by the said L. Hollister Jones, was made pursuant to and in compliance with the terms of said contract, Exhibit 'A'."

An easily permissible construction of these allegations is that the parties to this action have treated the original contract as continuing and binding upon them with respect to the half section now involved. If they have done that, if as the complaint indicates defendant has recognized a right in plaintiffs to proceed under the original contract, and they have performed the same as though binding upon them, and defendant has accepted the benefit of that performance on their part to the extent alleged, it is too late for him now to change his position and deny that plaintiffs have any interest in the property. If the original contract has been so construed by the parties as a continuing one, applicable to the half section now involved, then the least that plaintiffs are entitled to is an accounting on the basis of the original contract.

In that connection it must not be overlooked that L. E. Jones had something more than a mere privilege or option to pay Hammond at any time one-half the cost of a given property and thereby become "entitled to receive from the said Hammond and wife a deed for an undivided one-half thereof." In addition Hammond bound himself to treat as *payments* on any land purchased under the contract all moneys "realized from rent of any kind." That is to say, he was bound to credit against his advances on account of any property, all moneys realized therefrom. It follows that if and

when such receipts so accumulated as to offset all advances made by Hammond on account of any one property, including interest at the contract rate, Jones would become in equity the owner of an undivided half of such property and, upon a termination of the contract prior to its sale, he would be entitled to a conveyance.

That assumes of course that the transaction in question was the only one for consideration under the contract and that the state of the accounts between the parties was such as not to give Hammond any superior or offsetting equity.

Order, reversed.