Harold L. WARNER, Appellant,

v.

FIRST NATIONAL BANK OF MINNE-APOLIS, Appellee.

No. 15478.

United States Court of Appeals
Eighth Circuit.

Sept. 11, 1956.

R. H. Fryberger, Minneapolis, Minn. (M. R. Keith, Minneapolis, Minn., was with him on the brief), for appellant.

Joseph H. Colman, Minneapolis, Minn. (Harold G. Cant, Frank W. Plant, Jr., John G. Dorsey, Dorsey, Owen, Barker, Scott & Barber, and Cant, Taylor, Haverstock, Beardsley & Gray, Minneapolis, Minn., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from a summary judgment dismissing plaintiff's petition upon the ground that plaintiff's cause of action was barred by the statute of limitations. This action was commenced on February 15, 1954, and is a class suit for the benefit of parties interested in the estate of Ellsworth C. Warner, hereinafter called decedent, who died testate, a resident of Florida, on January 5, 1942. Decedent's will was admitted to probate by the Florida court on January 9, 1942, and two Florida banks nominated as executors were appointed executors and served in that capacity. Decedent in his will named the First National Bank of Minneapolis, defendant herein, as managing advisor of his estate, giving to said

defendant broad supervisory powers.[1] Decedent had formerly resided in Minneapolis and had been a director of defendant bank. Defendant had considerable familiarity with the decedent's property interests and his family problems. Defendant had agreed with the decedent to serve as managing advisor, and acted in such capacity throughout the administration of the estate. Defendant's rights as managing advisor were recognized by the executors. In most instances the executors obtained the advisor's approval of any proposed reports or applications, and consulted with the defendant generally as to all estate problems.

Plaintiff's complaint consists of 247 numbered paragraphs covering 200 pages. Plaintiff seeks relief against the defendant for damages for loss occasioned to decedent's estate by reason of defendant's failure to perform the duties it assumed as managing advisor. The complaint, after reciting background material and general allegations of the duties assumed by the managing advisor, particularizes the various alleged improper transactions in separate counts. Plaintiff alleges that the managing advisor failed to do things which it should have done, and improperly executed duties it did perform. Some of plaintiff's

1. Decedent's will, after providing for the appointment of executors, contains the following provisions pertaining to the managing advisor:

"My Executors shall exercise all of the powers set forth in this Section or otherwise possessed by them as Executors under the laws of the State of Florida, only in such manner as First National Bank and Trust Company of Minneapolis, as Managing Advisor, shall in writing approve or direct. The acceptance by my Executors of the Executorship under this Will shall be conclusive evidence of their approval and acquiescence in all of the provisions of this Section. My Executors shall be relieved of any liability for any loss which may result from the retention of investments or the sale of any property belonging to the estate or the reinvestment of any funds, or for any other action or non-action resulting from following the written approval or written directions of said Managing Advisor. As long as my Executors follow the written directions of said Managing Advisor, the liability of said Executors shall be limited to the exercise of reasonable care and diligence, safekeeping of the estate assets, proper maintenance of records, the accounting to the proper court and to the Managing Advisor, and to the legatees entitled thereto, and the furnishing to said Managing Advisor of copies of all documents filed in Probate Court and the furnishing to the Managing Advisor of such further information as it may from time to time request. My Executors, hereinabove named, are directed to make such accounts and as often as requested to do so to the Managing Advisor, and are directed to consult with and obtain approval of the Managing Advisor before taking any action of any kind affecting the assets of the estate or the interests of the legatees or beneficiaries hereunder. My

Executors are further directed to make and file proper Federal estate tax returns and Federal income tax returns and all other tax returns required by law and to pay all such taxes accruing thereunder as may be required, but before filing any such tax returns or paying any tax that may be assessed thereunder, my Executors shall first present such proposed tax returns to the Managing Advisor for its approval and they shall not be filed until so approved as to form and substance. Nothing herein contained shall be deemed to deprive the Court in which this Will is probated, from ordering and directing the Executors as to any matter in connection with the probate of my estate, even though such action may not be approved or directed by said Managing Advisor, provided, however, that before any such order of court is made that said Managing Advisor shall be given due and sufficient notice of the application for such order and the hearing thereon, so as to enable said Managing Advisor, which is also the residuary Trustee hereunder, to appear in court by counsel and to resist such application and proposed order of court. I have made the above provisions for the handling of my estate and for the duties imposed hereunder on said Managing Advisor for the reason that it has been familiar with my affairs for many years and is acquainted with the members of my family and because of its inability, under the laws of Florida, to act as the Executor of my estate in that State. I have given them the powers of approval and direction with no intent to place the title to or any interest whatsoever in, my estate during probate, in said Managing Advisor, it being my intent to place the full legal title and all interest in the assets of my estate, in my Executors above named, subject to the conditions hereinabove stated."

principal specific complaints are that the managing advisor failed to require proper accounts and reporting by the executors; that poor supervision of estate and income tax returns created liability for penalty, interest, and attorney's fees; that careless supervision of the sale of the estate's stocks and bonds caused needless loss; that the managing advisor should have insisted that the executors pay interest on unreasonable cash balances they maintained in their own banks; that defendant permitted the estate to be loaded with excessive expenses; that defendant permitted the payment of excessive attorneys' fees; and that the payment of legacies and the distribution and closing of the estate were unduly delayed. A further complaint, considerably stressed, is that the executors were allowed fees in the amount of $400,000, of which the defendant received one-half, and that such fees were paid in violation of a fee agreement with the decedent that the total executors' fees would not exceed $50,000. Plaintiff also contends that the antagonistic attitude taken by the defendant toward the beneficiaries and the refusal to supply the beneficiaries with adequate information as to the affairs of the estate compelled the beneficiaries to institute litigation to protect their interests and to obtain information, and that they are entitled to reimbursement for the expenses so incurred. To enumerate in detail all of plaintiff's claims would unduly extend this opinion. The claims of plaintiff are summarized in footnote 3 to the trial court's opinion, 135 F.Supp. 687, 689–690.

All claims and legacies due from the Warner estate have been paid. The decedent's will leaves all of his residuary estate to the defendant bank as trustee. Any loss incurred by the estate would affect only the residuary trust. The beneficiaries of the trust are the children of the decedent and their families. Plaintiff is a child of the decedent and a beneficiary of the residuary trust.

The defendant moved for a summary judgment upon the following grounds:

(a) plaintiff's failure to join indispensable parties; (b) no cause of action stated; (c) res judicata; (d) lack of probate jurisdiction; (e) statute of limitations; and (f) laches.

The trial court sustained defendant's motion for summary judgment upon the ground that the plaintiff's cause of action was barred by the statute of limitations. The validity of this determination is the principal question before us on appeal. Defendant asserts that its other grounds for summary judgment support the dismissal of the plaintiff's claim and should be considered in the event we do not uphold the trial court's determination on the statute of limitations issue.

We shall first briefly consider the rules applicable to summary judgments. The trial court has correctly stated that a motion for summary judgment is an extreme remedy, and should be granted only in the absence of a genuine material fact issue. The burden of demonstrating the nonexistence of any genuine fact issue is upon the moving party, and all doubts shall be resolved against him. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967; Traylor v. Black, Sivalls & Bryson, 8 Cir., 189 F. 2d 213, 216.

We are required to examine the challenges made by the defendant to the trial court's jurisdiction. Diversity of citizenship and requisite jurisdictional amount are established insofar as the parties now before the court are concerned. Defendant urges that the executors or some other representative of the Warner estate, such as an administrator ad litem or, in their absence, at least all of the beneficiaries of the trust, are indispensable parties. There is considerable merit to such contention. See Young v. Powell, 5 Cir., 179 F.2d 147; McAndrews v. Krause, 245 Minn. 85, 71 N.W.2d 153; Baker v. Dale, D.C.W.D.Mo., 123 F.Supp. 364. The issue of want of indispensable parties is not a jurisdictional one. Young v. Powell, supra; Baker v. Dale, supra. Rule 21 of the

Federal Rules of Civil Procedure, 28 U.S.C.A., provides that parties may be added at any stage of the action upon such terms as are just. Ordinarily, dismissal should not be ordered for failure to join an indispensable party, but an opportunity should be afforded to bring in such party. Keene v. Hale-Halsell Co., 5 Cir., 118 F.2d 332; Baker v. Dale, supra; Moore's Federal Practice, Vol. 3, § 21.04.

■■ Defendant also urges that the plaintiff has not adequately pleaded the necessity for a class action, and that plaintiff is not a proper party to represent the class. It appears to us that there is a fact dispute as to the number of members of the class, and also a fact dispute as to whether plaintiff's rights are antagonistic to those of other members of the class. As pointed out by the trial court, any deficiency in respect to pleading a class action is subject to correction by amendment. Since some fact questions are involved, we do not believe that the question of whether this case comes within the field of a class suit should be determined by summary judgment.

■ Defendant further contends that the federal court is without probate jurisdiction and can not interfere with state probate proceedings. The federal courts have no probate powers and may not exercise their jurisdiction to disturb or affect the possession of property in custody of state courts. Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256. However, it appears to us that it is not here proposed to interfere with the probate powers of the Florida court. The managing advisor was not an officer of the Florida probate court, and the approval of the executors' accounting does not necessarily include approval of the managing advisor's conduct. The basis of this action is for damages against the managing advisor for breach of duties it assumed. The will provides that if the executors in good faith rely upon the advice of the managing advisor they are protected and freed from liability. There are situa-

tions where the managing advisor might be responsible and the executors are protected. For example, if the managing advisor fraudulently or carelessly advised the executors as to the value of some security with which the executors were not familiar, and the executors in good faith relied upon this advice and acted upon it, they would be protected but there might well be liability on the part of the advisor giving such advice.

We agree with the trial court that the defendant has not established want of jurisdiction with sufficient definiteness and clarity to warrant a summary judgment of dismissal on the ground of lack of jurisdiction at the present stage of the proceedings.

We now proceed to the question of whether the trial court was warranted in granting summary judgment dismissing plaintiff's claim upon the ground that the statute of limitations bars recovery by the plaintiff. The parties agree that this action is covered by the Minnesota statute of limitations, Minnesota Statutes Annotated, § 541.05, which so far as here applicable provides:

"541.05 Various cases, six years

"The following actions shall be commenced within six years:

"(1) Upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed;

\*　　\*　　\*　　\*　　\*

"(6) For relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud;

"(7) To enforce a trust or compel a trustee to account, where he has neglected to discharge the trust, or claims to have fully performed it, or has repudiated the trust relation; \*　\*　\*."

■ Plaintiff contends subdivision (7) above quoted is the applicable statute, whereas defendant contends that subdivision (1) applies. The determina-

tion of the question of which subdivision applies is dependent upon whether or not defendant is a trustee of an express trust in its capacity as managing advisor. Subdivision (7) does not contain the limiting word "express", but the Minnesota Supreme Court has repeatedly held that subdivision (7) applies only to express trusts. Jones v. Hammond, 168 Minn. 131, 209 N.W. 864, 865; Stillwater & St. P. R. Co. v. City of Stillwater, 66 Minn. 176, 178, 68 N.W. 836, 837. In the Stillwater case the court observed that subdivision (7) merely recognizes and codifies the existing equity rule, stating, 68 N.W. at page 837, "This statute, like the equity rule which it follows, applies only to express, technical, and continuing trusts, of the kind which were cognizable exclusively in a court of equity". We do not believe the provisions of the decedent's will appointing defendant managing advisor, heretofore quoted in footnote 1, create an express trust. Plaintiff argues that defendant was in effect co-executor. We do not agree. As a nonresident corporation, the bank could not serve as executor under Florida law. Florida Statutes 1941, § 655.27, F.S.A. The decedent expressly recognized in his will that the defendant could not serve as executor, and did not nominate defendant to such office. The court did not appoint the defendant executor.

Plaintiff concedes that it has found no case like this one and that he has no direct authority holding that a person in the position of the managing advisor in the present case is a trustee of an express trust. Examination of the provisions of the will convinces us that the managing advisor is not a trustee of an express trust. No title to any trust property is placed in the defendant, the will stating, "I have given them the powers of approval and direction with no intent to place the title to or any interest whatsoever in, my estate during probate, in said Managing Advisor." Restatement of Trusts, § 2h, states:

"*The elements of a trust.* As appears in this Section a trust in-

volves three elements, namely, (1) a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; (2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit; (3) trust property, which is held by the trustee for the beneficiary."

A trust can not be created unless there is trust property. Restatement of Trusts, § 74; 54 Am.Jur. 44. In Farmers State Bank of Fosston v. Sig Ellingson & Co., 218 Minn. 411, 16 N.W.2d 319, at pages 322, 323, the court makes the following statements:

"An express trust, as distinguished from a resulting or a constructive one, involves the separation of the legal and beneficial interests in a thing or *res*, as it is called, whereby the legal interests in the trust *res* are held by a person, the trustee, for the benefit of another, the beneficiary, who has an equitable interest in the *res* to receive whatever benefits he is entitled to therefrom by the terms of the trust. \* \* \*

\* \* \* \* \*

" \* \* \* To constitute an express trust, there must be a designated trustee, a designated trust *res*, and a designated beneficiary. \* \* \* "

Since in our present case no property is placed in the hands of the managing advisor, there can be no express trust.

Plaintiff next contends that in any event the managing advisor's duties are analogous to those of a trustee of an express trust, and that defendant is a quasi trustee and, as such, is to be treated as a trustee of an express trust. In support of this position plaintiff cites United States National Bank of Portland v. First National Bank of Portland, 172 Or. 683, 142 P.2d 785, 143 P. 2d 909; Gathright's Trustee v. Gaut, 276 Ky. 562, 124 S.W.2d 782, 120 A.L.R. 1403; Donahue v. Quackenbush, 62

Minn. 132, 64 N.W. 141. Donahue v. Quackenbush involved a situation where a court-appointed receiver in possession of plaintiff's land acquired legal title to some of the land in his possession as receiver through execution proceedings upon a judgment he purchased. It was held that trust obligations were placed upon him by his appointment as receiver and his taking possession of the property, and that the statute of limitations did not run until repudiation of the trust. It is noted that in the Donahue case the receiver was acting under court appointment and was placed in possession of the real estate by such appointment.

▆▆▆ We find nothing in the Donahue case that clearly indicates that the Minnesota court would extend the express trust obligation to the factual situation in our present case. Neither the United States National Bank of Portland case, supra, nor the Gathright case, supra, involved any question pertaining to the statute of limitations. In each of these cases the court found that the advisor involved was not in a strict sense a trustee of an express trust. Each case contains a statement that the responsibilities of the advisor are analogous to those of the trustee. However, we believe that substantial distinctions exist between a trustee and an advisor. The advisor does not have possession of the trust property or the proceeds thereof. We have found no decided case in Minnesota or elsewhere which has gone to the extent of holding a fiduciary who is not operating under court order and has neither title to nor possession of trust property is to be treated as a trustee of an express trust for statute of limitations purposes. It is impossible for us to say with any degree of certainty that the Minnesota Supreme Court will, when and if this problem is presented to it, extend the statute of limitations applicable to express trusts to cover the managing advisor relationship present in this case. This court has frequently stated that upon doubtful questions of local law it will not adopt a view contrary to that of the trial judge unless convinced of error. Buder v. Becker, 8 Cir., 185 F.2d 311. We are not convinced that the trial court committed error in determining that the statute of limitations applicable to this case is subdivision (1) of section 541.05, Minnesota Statutes Annotated.

The trial court in its opinion states, 135 F.Supp. at page 693:

" * * * With the possible exception of an express trust and fraud, or fraudulent concealment, the statute of limitations commences to run from the time of the commission of the act complained of, and, in my opinion, the fiduciary relationship does not toll the running of the statute."

The foregoing statement is supported by authority set out in footnote 15 to the trial court's opinion. The trial court fixed March 19, 1953, as the date on which the statute of limitations operated to bar plaintiff's claims. The final accounting of the executors in the Florida probate court was filed on February 6, 1947. Notice of hearing thereon was served upon all parties interested in the estate. On March 19, 1947, plaintiff, his wife, and other beneficiaries filed detailed objections to the final accounting of the executors. After due hearing the court on April 18, 1947, overruled all objections, approved the final accounting, and ordered distribution of the remaining assets to the residuary trustee. The trial court in effect found that the extensive objections filed indicated that the plaintiff and the other objectors on March 19, 1947, had knowledge of all substantial violations of which they are now complaining which occurred between the opening of the estate in 1942 and the 1947 accounting. Many of the matters now objected to occurred in the early years of the administration of the estate, and were fully disclosed in reports filed, copies of which were furnished the beneficiaries of the estate.

▆▆▆ Plaintiff claims that the statute of limitations did not commence to run before November 11, 1954, which is the date on which this estate was closed and the executors discharged. The Min-

nesota court has held that the statute of limitations commences to run when the action accrues, and that the action accrues against an executor or administrator and his bondsman on the date of entry of the final decree of distribution, and the fact that the fiduciary is not formally discharged until a later date does not suspend the running of the statute of limitations. Burns v. New Amsterdam Casualty Co., 205 Minn. 391, 285 N.W. 885; Ganser v. Ganser, 83 Minn. 199, 86 N.W. 18.

▆▆▆ Plaintiff next contends that the running of the statute of limitations was tolled since the defendant represented both sides of conflicting claims, and that as trustee of the residuary trust it alone possessed the right of action against itself as managing advisor. Plaintiff relies on Yager v. Liberty Royalties Corporation, 10 Cir., 123 F.2d 44, at page 47, and language therein to the following effect:

> "But it is implicit in the statute that before the period begins to run there must be some one in existence by whom, and a different person against whom, the claim may be enforced. That is an implied underlying principle of the statute. And the statute therefore is tolled during the time one person represents both sides of a conflicting claim. * * * *"

The reason for the rule stated in the foregoing quotation is that it is inequitable to hold the statute of limitations has run when there is no one in existence other than the party in whose favor the statute runs to assert the claim. In the present case, however, the reason for asserting the rule does not exist. The executors' handling of the estate was fully approved by the 1947 order approving their final accounting. The executors certainly were proper parties to bring an action against the managing advisor in behalf of the estate for any damages caused by breach of duty by the managing advisor. The executors were not finally discharged and released until 1954. They remained in office more than six years after the approval of their final accounting, and during that period the statute of limitations ran in favor of the managing advisor. There is no allegation in the pleadings of any concealment or fraud practiced upon the executors by the managing advisor such as would toll the statute. It would also seem that if plaintiff can properly bring the present action he could have brought the said action within the limitation period. At the time plaintiff commenced this action the executors had not been discharged. The managing advisor in response to plaintiff's complaints repeatedly denied that it had violated any of its duties. Plaintiff had ample reason to believe that the defendant as trustee did not propose to bring any action against itself for breach of its duties as managing advisor. Plaintiff, upon proper showing to the probate court, could have obtained an order requiring the executors to bring the action, or to have an administrator ad litem appointed to represent the estate in the event the executors were interested adversely to the estate. See § 732.55, Florida Statutes 1941, F.S.A.

▆▆▆ Where an action is commenced after the lapse of the applicable statute of limitations, the burden is upon the plaintiff to plead and prove that the unreasonable delay in the assertion of his rights was because the facts on which his rights were based were not discovered until within the statutory period. Sweet v. Lowry, 131 Minn. 109, 154 N.W. 793; Whitcomb v. Wright, 176 Minn. 274, 223 N.W. 294; Stark v. Equitable Life Assurance Society of United States, 205 Minn. 138, 285 N.W. 466; Chisholm v. House, 10 Cir., 183 F.2d 698. Defendant in its brief asserts that the plaintiff in his pleadings does not allege that he did not have knowledge of the facts stated in his complaint for less than six years prior to the commencement of the action. Plaintiff in his reply brief makes no attempt to show where he has made such an allegation. We are unable to find any proper allegation of concealment or undiscovered

fraud in plaintiff's pleadings. Plaintiff in his brief makes some attempt to show that additional information was acquired within the statutory period of limitations. We believe that the plaintiff had sufficient knowledge of the wrongs of which he is complaining to start the operation of the statute of limitations. We believe that the following statement made by the Fifth Circuit in Phillips Petroleum Co. v. Johnson, 155 F.2d 185, 191, is applicable here:

"He [the plaintiff] could not wait to acquire better proofs, but should sue and then use the implements the Rules of Procedure provide for extracting from the opposite party and others the full truth. He cannot wait more than four years to investigate. * * * We do not understand that full and precise knowledge is requisite. That has not yet been attained perhaps. It is enough for one to know that he has a cause of action * * *."

Plaintiff has not established his contention that his claims constitute a single cause of action. Such a result would not necessarily follow even if an express trust existed. In the case of express trusts the statute would commence to run upon performance or repudiation of the trust with knowledge thereof by the cestui. See Johnston v. Johnston, 107 Minn. 109, 119 N.W. 652, 655. It seems apparent to us that in this case plaintiff is charging a series of wrongful acts committed at different times. Under subdivision (1), it seems clear that the statute commences to run upon each wrongful act at the time that it is committed.

We have carefully examined the record in this case, including the exhibits not a part of the printed record. From such examination we are satisfied that the plaintiff had full knowledge of all alleged breaches of duty by the managing advisor, upon which he is now relying, and which occurred prior to the final accounting of February 16, 1947. Copies of all accountings were furnished and made available to the parties interested in this estate, and, in our opinion, all beneficiaries had adequate information concerning all substantial transactions up to and including those contained in the 1947 final accounting. This is fully demonstrated by the contents of plaintiff's objections to the final accounting, consisting of 20 pages. There, as here, objection was made to failure to require the executors to pay interest on excessive daily balances; to sales of bonds and stocks at less than their appraised value; to unreasonable delay in making distribution; to inept handling of estate and income tax problems; to mismanagement of E. C. Warner Company, Ellsworth Company, and Oldworth Trading Company, Ltd., companies owned or controlled by the estate; to improper accounting and management of the entire estate; and to the incurring and payment of needless and excessive expenses. Serious objection is also made to the payment of executors' fees in the amount of $400,000 in which defendant participated as managing advisor. The order allowing these fees was entered after notice and hearing in 1945. Plaintiff objected to these fees in 1947, including in his objection his contention that the fees were in violation of a contract entered into by the banks serving as executors and defendant with the decedent, limiting fees to $50,000 in the absence of litigation. All objections were overruled. In disposing of the 1947 objections the court states:

"The court finds from the evidence and the admissions made that the objecting respondents have, at all times, been fully informed concerning the administration of this estate and that said objectors, and all interested parties, have been voluntarily furnished, from time to time, with data and information concerning said estate and of the steps in its administration, and the Court further finds that the Executors have never, at any time, refused to these objecting respondents, or any other interested party, any requested information pertaining to the

administration of this estate. The Court further finds that there is no evidence whatsoever to support the objections interposed to the final accounting filed herein. It is further the finding of this Court that said objections are not only not well founded but that they were not filed in good faith but were in the nature of a fishing expedition and interposed for the purpose of delay. * * * "

After plaintiff's motion for rehearing upon objections to the final accounting was denied, plaintiff and his wife commenced action in the United States District Court for the Southern District of Florida against the executors and defendant for damages for excessive fees allowed by the probate court, claiming the difference between $400,000, executors' fees paid, and $50,000, the claimed contract limit, and also recovery of $275,000 attorneys' fees paid. The Florida federal court sustained the motion of the Florida banks for summary judgment of dismissal, stating that jurisdiction for fixing fees was in the probate court, and specifically finding that "full disclosure was made by the defendant banks to the plaintiffs herein of the material matters relating to the alleged contractual limitation of executor's fees and attorney's fees."

The defendant, although made a party to the above Florida federal court proceeding, did not join in the motion for summary judgment.

■ Plaintiff brought many suits in many courts raising the questions which he is now raising. A detailed comparison between the charges made by the plaintiff in his objections in the probate proceedings and the various other proceedings which he commenced with the allegations of the present complaint would consume much space and serve but little purpose. We are convinced, after careful consideration of all of the records before us, that the plaintiff had knowledge of all of the substantial breaches of duties he is claiming in his present complaint at the time he filed his 1947 probate objections. We are therefore convinced that the trial court properly held that all claims based on transactions occurring before the filing of objections of plaintiff to final report on March 19, 1947, were barred by subdivision (1) of section 541.05 of the Minnesota statutes.

■ Plaintiff's complaint is very broad and alleges continuing breaches of duty. The estate was not finally closed until November 11, 1954, and some assets of the estate were retained by the executors until 1954. We believe that the managing advisor's duties continued until the estate was closed. Obviously, any transaction involving a breach of the managing advisor's duties occurring within six years from the date of the commencement of the action would not be barred by the statute of limitations. It would seem that most of the substantial transactions about which the plaintiff is complaining occurred before 1947. However, because of the broad allegations of the complaint, which must be deemed admitted for the purpose of passing on the motion for summary judgment, we can not say with certainty that no cause of action has arisen since 1947. Defendant has conceded that claims 6 and 18 are not barred by limitations. Claim 6 is a claim for reimbursement for attorneys' fees in an action brought in Canada in 1949 to seek information regarding the Oldworth Company. Claim 18 is for expenses incurred by plaintiff in 1948 in successfully resisting an executors' claim for reimbursement for attorneys' fees incurred by the executors in defense of plaintiff's action in a Florida federal court against the executors for recovery of fees.

The judgment of dismissal on the ground of the statute of limitations will be affirmed as to all claims based upon any transactions occurring on or before March 19, 1947. The judgment will be modified to exclude from the bar of the statute of limitations claims 6 and 18, and any claims based upon any transaction occurring subsequent to February 15, 1948, or any transaction occurring

after March 19, 1947, and not discovered by beneficiaries until after February 15, 1948.[2]

This case is remanded to the trial court for further proceedings not inconsistent with the views expressed in this opinion.

2. Since the first report filed by executors after the 1947 final accounting was not filed until July, 1948, there is a possible fact question as to whether beneficiaries had knowledge of any improper conduct occurring after March 19, 1947, and before the statute of limitations became operative on February 15, 1948.